Ruth E. TURNER, Administratrix of the Estate of Jerrald W. Turner, Deceased, and the Aetna Casualty and Surety Company, Intervener, Appellants,

v.

WEST TEXAS UTILITIES COMPANY et al., Appellees.

No. 18491.

United States Court of Appeals
Fifth Circuit.

May 2, 1961.

Rehearing Denied June 21, 1961.

William E. Chandler, Jr., Columbia, S. C., Robert D. Grisham, Abilene, Tex., Jack Little, Big Spring, Tex., Grisham & Jeffrey, Abilene, Tex., for appellants.

Marvin S. Sprain, Abilene, Tex., Hobert Price, Dallas, Tex., McMahon, Smart, Sprain, Wilson & Camp, Abilene, Tex., for appellees.

Before TUTTLE, Chief Judge, and JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

James W. Turner and Ruth E. Turner are the parents of Jerrald W. Turner, deceased, and Ruth E. Turner is the administratrix of his estate. They brought suit against several defendants, one of whom was the appellee, Tidmore Construction Company, herein usually called Tidmore. Recovery was sought for the wrongful death of the plaintiffs' son. Aetna Casualty and Surety Company had workmen's compensation insurance covering one of the defendants. It had settled a compensation claim arising out of the death of Jerrald W. Turner, and was permitted to intervene so that it might be reimbursed out of any award of damages that the plaintiffs might recover. It is also an appellant. The jury returned a verdict against the appellee, Tidmore Construction Company. The district court granted a motion for a judgment notwithstanding the verdict. From that judgment this appeal has been taken by the administratrix and the intervener.

Jerrald W. Turner was born in South Carolina where he resided until 1955 when he went into the United States Air Force. He was stationed at the United States Air Force Base at Abilene, Texas, at the time he met his death. He was then eighteen years of age.

Tidmore entered into a contract with Thomasson Enterprises for the building of a shopping center on Fourteenth Street in Abilene, Texas. Tidmore made a subcontract with Fred Peavy, doing business as West Texas Steel Erectors,[1] to unload and to transfer from a rail siding to the job site approximately 1620 squares of metal decking. Without Tidmore's knowledge, Peavy subcontracted the moving work to Abilene Crane Service, Inc., of which Clyde Carpenter was a vice-president. Abilene Crane Service procured the services of two trucks, one owned by a man named Willingham and driven by Jimmie Dodson, and the other owned and driven by D. L. Foster. The moving was to be done on May 26, 1956, a Saturday. Young Turner was not on duty with the Air Force that day and was hired by Carpenter to assist in the work. The evidence showed and the jury found that Jerrald Turner was an employee of Abilene Crane Service, Inc.

The two trucks which had been hired by Abilene Crane Service, and the crane owned by it and operated by Carpenter, went to the rail siding. There, by the use of the crane, bundles of the metal decking were loaded on the trucks. Each bundle weighed several thousand pounds. The loaded trucks and the crane proceeded toward the construction site which was something more than 300 feet back from Fourteenth Street. The Foster truck moved to the site of the work where it was unloaded without incident. As Dodson was bringing his truck from Fourteenth Street to the Thomasson property at a point where no crossing had been provided, three bundles fell from the trailer of his truck. The Foster truck was brought up and it was intended that the bundles would be lifted from the ground by the crane and placed on the truck. Along the edge of Fourteenth

---

1. It is uncertain from the record, whether West Texas Steel Erectors was a trade name for Peavy individually or for him and others as a partnership. It is also immaterial.

Street, a foot and a half or two feet from the Thomasson property, was a high voltage electric transmission line which was owned and maintained by West Texas Utilities Company. This line ran almost directly above the bundles of decking which had fallen from the truck. At this point the line was a little more than twenty-eight feet above the surface.

As the bundles were about to be lifted on the Foster truck, there were on the scene the following persons: Carpenter who was operating the crane, Jimmie Dodson, the driver of one of the trucks, D. L. Foster, the driver of the other truck, Frank Dodson, a cousin of Jimmie, Fred Peavy and James Cagle, of West Texas Steel Erectors, who were, it seems, mere bystanders, Leroy Ray, an employee of West Texas Steel Erectors who was acting as a helper on the crane, and Jerrald Turner. No one was on the job or at the site representing Tidmore. At the time of the trial, Peavy was dead and Ray was in a penitentiary in Oklahoma. One of the three bundles was picked up and loaded in a routine manner. With the two Dodson boys and Foster standing close by, Turner started to hook or loop the load line of the crane on one of the two bundles which remained on the ground. The crane or line from it came in contact with the electric power line and Turner was electrocuted.

It was alleged by the plaintiffs that Tidmore was negligent in failing to warn of the dangerous condition existing with respect to the high tension wires, and particularly in failing to post signs or notices of warning of the transmission of high voltage electricity. The evidence showed that Turner was of or above average intelligence, had finished the tenth grade in high school, had lived around electricity all of his life and had been warned of its dangers. Both of the Dodsons testified that they shouted to Carpenter to watch out for, or keep out of "those high lines." One of the Dodsons said he had a pretty strong voice. Foster testified that he heard the shouted warnings. He also stated that the whole group, including Turner, was talking about the high line. Mrs. Turner said that she had never heard the term "high line" in South Carolina. The plaintiffs placed an electrical engineer on the stand. He was a member of a firm of mechanical and electrical consultants. He said he was an expert on the kind of warning signs that contractors give for high voltage lines. He testified that a warning sign should have been posted, but he declined to say that it was customary for contractors to post warnings of high voltage wires over streets which run twenty-eight feet above the surface.

The foregoing is, in brief, a summary of the testimony as to Tidmore's negligence liability upon which the jury found Tidmore guilty of negligence and that such negligence was a proximate cause of Jerrald Turner's death. Upon the evidence the district court found that Tidmore breached no duty owed to the decedent, and neither committed nor omitted any act which was a proximate cause of Jerrald Turner's death. The correctness of this determination is challenged by the appeal.

The appellee is critical of the arrangement made by the appellants of the matters contained in their brief. Counsel for the appellee say that it has been their experience that in most briefs filed in this Court the appellants set forth the points on which they rely and the arguments and authorities under the various points of error, and that the appellees in turn set forth their counterpoints and arguments and authorities thereunder. In Rule 24 of the Rules of this Court, 28 U.S.C.A., provision is made as to what the briefs shall contain and the order in which the matters shall be set forth. There is no reference to points or counterpoints. The appellants' brief is in substantial conformity with the Rule. The task of the Court would be lightened if the Rule were more generally observed.

The appellants and the appellee differ as to the manner of stating the issue presented by this appeal. No matter how it is stated, the only question before us is

whether there is sufficient evidence to sustain a jury finding that the death of Jerrald W. Turner was proximately caused by the negligence of the appellee, Tidmore Construction Company. In more specific terms, our question is whether the evidence showed that Tidmore was under a duty to warn Turner of danger, and if so, whether there was a breach of that duty which resulted in his death.

 There is no question here of any negligence of Tidmore arising from the presence of the wires. They were not on the property of the landowner for whom Tidmore was erecting a building. They were in the adjacent street and of a height exceeding safety code requirements. It is held that "one cannot, for his own advantage, invite others to come on, or to remain about, premises in his possession and under his control, without using proper care to give warning of a grave danger to be probably there encountered, of which the invitees may have no knowledge." Galveston-Houston Electric Ry. Co. v. Reinle, 113 Tex. 456, 258 S.W. 803, 804. This statement has been recently quoted in Houston Lighting & Power Co. v. Brooks, Tex., 336 S.W.2d 603. See also American General Insurance Co. v. Southwestern Gas & Electric Co., 5 Cir., 1940, 115 F.2d 706. A general contractor in control of premises owes to the employees of a subcontractor a duty similar to that owned by an owner or occupier of land to his invitees. McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391; Texas Electric Service Co. v. Holt, Tex.Civ.App., 249 S.W.2d 662; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853.

 If any duty existed to warn Turner that the wires were carrying electricity of high voltage, Tidmore would be relieved of that duty if a warning was, in fact, given. The evidence is undisputed that there were several shouted warnings given to the crane operator to watch out for "those lines" or "those high line wires." That Turner could not have avoided hearing these warnings is conceded. The appellants contend that there was a jury issue as to whether Turner knew that "high line" meant a high voltage transmission line and that the jury verdict resolved the question and determined that he was without knowledge. Whatever may be said on this question, it is not controlling of our decision here. In construing and applying the Texas law of negligence, this Court has held "the owner or occupier of particular property has a duty to warn the employees of an independent contractor who has undertaken to do work on the property, of dangers that are hidden on or inhere in that property, and that this duty is discharged if those in charge of the work for the independent contractor are given warning or have knowledge of the danger." Gulf Oil Corporation v. Bivins, 5 Cir., 1960, 276 F.2d 753, 758, certiorari denied 364 U.S. 835, 81 S.Ct. 70, 5 L.Ed. 2d 61, rehearing denied 364 U.S. 906, 81 S.Ct. 231, 5 L.Ed.2d 199. Here it is undisputed, admitted, and found by the jury, that Carpenter, an officer of the subcontractor corporation which employed Turner and who was the operator of the crane, knew of the presence of the wires and that they were high voltage electric wires. This being so, the duty of Tidmore to Turner was satisfied. This principle is fully developed in Gulf Oil Corporation v. Bivins, where the authorities are cited and discussed, and the rule need not be further discussed here.

The conclusion we have reached relieves the necessity of determining whether Tidmore could have reasonably foreseen that Abilene Crane Service would negligently contact the high tension lines with the boom of its crane or the cable attached to it so as to bring into play the duty to warn doctrine. See American General Insurance Co. v. Southwestern Gas & Electric Co., supra; Houston Lighting & Power Co. v. Brooks, supra.

The district court did not err in granting the motion for judgment notwithstanding the verdict and entering judgment for the defendant. Its judgment is

Affirmed.