Vera CROLEY, etc., Plaintiff-Appellant,

v.

MATSON NAVIGATION COMPANY
et al., Defendants-Appellees.

David E. BOULER, Plaintiff-Appellant,

v.

MATSON NAVIGATION COMPANY
et al., Defendants-Appellees.

No. 29701.

United States Court of Appeals,
Fifth Circuit.

Nov. 2, 1970.

Rehearing Denied Feb. 26, 1971.

Warren L. Hammond, Jr., Richard Bounds, Cunningham, Bounds & Byrd, Mobile, Ala., for plaintiffs-appellants.

Theodore K. Jackson, W. Boyd Reeves, Mobile, Ala., for Matson Navigation Co., Armbrecht, Jackson & DeMouy, Mobile, Ala., of counsel.

Before RIVES, WISDOM and GOD-BOLD, Circuit Judges.

WISDOM, Circuit Judge:

The plaintiff David E. Bouler and the plaintiff Vera Croley's intestate, Jessie O. Croley, were employees of the Alabama Dry Dock and Shipbuilding Company (ADDSCO). On October 26, 1965, Bouler was injured and Jessie O. Croley killed when gases or vapors in certain tanks on the S.S. MARINE DEVIL exploded. At the time of the explosion, the two men were working on board the vessel, a Matson Navigation Company ship that was undergoing conversion repairs at ADDSCO's shipyard in Mobile, Alabama. It is undisputed that the material that gave off the explosive vapors was a preservative known as Fluid Film, Grade BM, which was being used by ADDSCO to coat the ballast

tanks of the vessel. Eureka Chemical Company manufactured and sold Fluid Film.

In 1964 ADDSCO had contracted with Matson to convert two Matson owned vessels, the S.S. MARINE DEVIL and the S.S. MARINE DRAGON, into trailer carriers. The contract, among other things, obligated ADDSCO to indemnify Matson for any personal injury liability that it might incur as owner of the vessels in connection with the conversion work. The two vessels, both "dead ships," had to be towed from the state of Washington, where they were laid up in the "mothball fleet," to ADDSCO's shipyard in Mobile. While enroute from Washington to Mobile, the two vessels stopped in San Francisco, where Eureka placed 400 drums of Fluid Film on board the vessels for delivery to ADDSCO. Matson had specified in the conversion contract that ADDSCO was to use Fluid Film, Grade BM, a rust preventive, to coat the ballast tanks of the two ships. Eureka had formulated Fluid Film, Grade BM, especially for Matson and sold it only to Matson. Matson had purchased 400 drums of the preservative in San Francisco for ADDSCO's account and later billed ADDSCO, in accordance with the terms of the conversion contract, for the cost of the film.

During the course of the conversion work ADDSCO proceeded to coat the ballast tanks on both vessels with the Fluid Film. About ten days after the tanks of the S.S. MARINE DEVIL had been coated, ADDSCO welders cut off certain vent pipes leading to the tanks, causing molten slag to fall through the pipes into the coated tanks. The Fluid Film ignited, and minutes later, two violent explosions occurred in the tanks bringing injury to Bouler and death to Croley. A United States Coast Guard investigation of the explosions revealed that Fluid Film would burn furiously and give off explosive gases when subjected to heat.

The plaintiffs filed actions for damages against both Matson and Eureka in the United States District Court for the Southern District of Alabama. They initially sought to hold Matson liable on the theory that the vessel was unseaworthy. Through discovery proceedings, however, the plaintiffs became aware of the fact that the S.S. MARINE DEVIL was a "dead ship"; it had not been in navigation for many years. Therefore, the plaintiffs amended their complaints to allege that Matson had been negligent in that: (1) Matson specified and procured the preservative which Matson knew or should have known was capable of producing explosive gases; (2) Matson failed to warn the plaintiffs that the preservative was flammable and dangerous; and (3) Matson exercised control over the work being performed by the plaintiffs and their employer, ADDSCO. After the plaintiffs conducted discovery proceedings, Matson—but not Eureka—moved for summary judgment in its favor. The district court denied the motion, and after argument, denied Matson's motion for reconsideration. The plaintiffs took additional depositions, and Matson again filed a motion for summary judgment. The district court heard argument, and then on the basis of the pleadings, affidavits, admissions, answers to interrogatories, and depositions presented, vacated its previous rulings and granted Matson's motion for summary judgment. See S.D.Ala. 1969, 313 F. Supp. 555. The plaintiffs have appealed from that order.

Rule 56(c) of the Federal Rules of Civil Procedure allows the court to enter summary judgment in favor of the moving party only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Keating v. Jones Development of Missouri, Inc., 5 Cir. 1968, 398 F.2d 1011, 1013; Harvey v. Great Atlantic & Pacific Tea Co., 5 Cir. 1968, 388 F.2d 123, 124; Marsden v. Patane, 5 Cir. 1967, 380 F.2d 489, 491. The moving party has the burden of demonstrating clearly that there is no genuine issue of fact. Liberty Leasing Co. v.

Hillsum Sales Corp., 5 Cir., 1967, 380 F.2d 1013, 1014; National Screen Serv. Corp. v. Poster Exchange, Inc., 5 Cir. 1962, 305 F.2d 647, 651. Moreover, the evidence presented at the hearing on the motion must be considered in the light most favorable to the opposing party, and he must be given the benefit of all inferences that might reasonably be drawn in his favor. *See* Harvey v. Great Atlantic & Pacific Tea Co., *supra*; 3 W. Barron & A. Holtzoff, Federal Practice & Procedure § 1235, at 139–140 (Wright Ed. 1958).

■ "Summary judgment will not usually be as feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting testimony, as it is in other kinds of litigation. * * * " Wright, Federal Courts, 412 (2d Ed. 1970). *See* Harvey v. Great Atlantic & Pacific Tea Co., *supra*; Marsden v. Patane, *supra*; Gauck v. Maleski, 5 Cir. 1965, 346 F.2d 433, 437. Even when the facts underlying the issue of negligence are undisputed, the issue must still be submitted to the jury if reasonable men could reach different conclusions and inferences from those facts. Marsden v. Patane, *supra*. Of course, it would be a mistake to conclude that summary judgment is never appropriate in a negligence action, but the circumstances in which it is proper are rare. *See* W. Barron & A. Holtzoff, *supra*, § 1232.1, at 106.

The district court apparently derived its decision from the following principles of substantive law: an owner of property has a duty to warn the employees of an independent contractor, who has undertaken to do work on the property, of dangerous conditions on the property. The owner performs and discharges his duty if he gives warning to those persons supervising the work for the independent contractor. It follows then that there is no duty on the owner to warn the employees of the contractor if they are already fully aware of the danger. Crawford Johnson & Co. v. Duffner, 279 Ala. 678, 189 So.2d 474, 477 (1966);

United States Cast Iron Pipe & Foundry Co. v. Fuller, 212 Ala. 177, 102 So. 25, 26–27 (1924). *See also* Huffstutler v. Hercules Powder Co., 5 Cir. 1962, 305 F.2d 292; Turner v. West Texas Utilities Co., 5 Cir. 1961, 290 F.2d 191; Gulf Oil Corp. v. Bivins, 5 Cir. 1960, 276 F.2d 753. Applying these principles to the instant case, the district court stated:

Here, the undisputed evidence shows that the employer of the plaintiffs [ADDSCO] knew of the dangerous characteristics of the preservative Fluid Film, Grade BM. Consequently, even if Matson knew or should have known of the dangerous propensities of the product, and all of the evidence in this regard is to the contrary, any duty which Matson may have owed to the plaintiffs to warn them of said condition was discharged by the knowledge of their employer, ADDSCO, of the condition. 313 F.Supp. at 558–559.

The plaintiffs accept for the purposes of this appeal the correctness of the above legal principles. They contend, however, that the evidence, construed in the light most favorable to the plaintiffs, raises a factual issue as to whether their employer, ADDSCO, had knowledge of the dangerous characteristics of Fluid Film. *See* Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967, 972.

The evidence relied on by the district court to establish conclusively that ADDSCO had knowledge of the danger consisted of the affidavit of D. L. Turner, safety engineer for ADDSCO, and the deposition of James M. Backes, an independent chemist employed by ADDSCO. Backes testified that through tests he had conducted on Fluid Film, Grade BM he discovered that the preservative was flammable. He stated also that he warned Turner of that fact. Turner confirmed in his affidavit that Backes had tested the product and found it to be "highly flammable and dangerous." Turner stated that upon being advised of that fact, he instructed the craft supervisors working on both vessels that the product was flammable and that no

flame, sparks, or intense heat should be permitted to come in contact with the film. He said further that ADDSCO had several years before experienced a fire on another vessel that had been coated with Eureka Fluid Film.

Under Rule 56(e) the plaintiffs may not avoid the entry of summary judgment against them by merely alleging in their pleadings that a disputed factual issue exists. They must set forth, by affidavits or otherwise, specific facts demonstrating that there is a genuine issue for trial. *See* Piper v. United States, 5 Cir. 1968, 392 F.2d 462, 464; Liberty Leasing Co. v. Hillsum Sales Corp., 5 Cir. 1967, 380 F.2d 1013, 1015.

The plaintiffs in this case did not rest on the allegations in their pleadings; they conducted extensive discovery proceedings, the results of which were before the district court on the motion for summary judgment. Many of those affidavits and depositions contain statements that directly or inferentially contradict the testimony of Turner and Backes. Several ADDSCO employees— W. A. Jones, supervisor and manager of the entire conversion project; Thomas Jefferson Nelson, pipe supervisor in charge of cutting off the vent pipes; Joseph William Ostromb, ship superintendent; Carl Edward Lee, pipe foreman working under Nelson; James M. Jones, welder; and M. K. Worthy, pipe fitter foreman—stated in depositions that they had received no warning about the dangerous characteristics of Fluid Film and that they had no reason to believe that the product was flammable. Although Arnold Dupree, ADDSCO's vice-president of operations, testified that he knew that Fluid Film was flammable, he also testified that he did not know of the explosive characteristics of the preservative. Eureka, in its answers to the plaintiffs' interrogatories, denied that its product was flammable or explosive. Backes, the independent chemist on whose statements the district court relied, also testified that following his initial tests Turner had told him that ADDSCO had received

other information that led them to believe that Fluid Film was not flammable.

This Court has not lagged behind other circuit courts in holding that summary judgment should be granted only when it is quite clear what the truth is. NLRB v. Smith Industries, Inc., 5 Cir. 1968, 403 F.2d 889, 893; National Screen Serv. Corp. v. Poster Exchange, Inc., 5 Cir. 1962, 305 F.2d 647, 651. Thus if reasonable minds could reach different conclusions and inferences from the evidence, the court must submit the case to the jury. Marsden v. Patane, 5 Cir. 1962, 380 F.2d 489, 491.

In the instant case the district court concluded from the affidavits, depositions, admissions, and answers to interrogatories that "the facts conclusively show" that ADDSCO had knowledge of the dangerous characteristics of the Fluid Film. 313 F.Supp. at 558. Nevertheless, on two earlier occasions, after evaluating substantially the same evidence, including the Turner affidavit and the Backes deposition, the court refused to grant Matson's motions for summary judgment. The plaintiffs point out that the fact of ADDSCO's knowledge is not the only inference that could reasonably be drawn from the evidence. A jury might well believe the testimony of the ADDSCO craft and job supervisors that they had received no warning about Fluid Film. Since it is only natural to assume that Turner, as safety engineer, would have warned his co-employees of any safety hazards, the jury might reasonably conclude that, despite his testimony, he did not know that Fluid Film presented any danger to the ADDSCO employees. Or, even if Turner, Backes, and Dupree knew that Fluid Film was flammable, there is no evidence that they knew that it would cause an explosion when heated. A jury could reasonably find that Matson failed to warn ADDSCO's employees of the danger of explosions and that this constituted negligence.

The plaintiffs also argue that since the fact of ADDSCO's knowledge rests largely on the testimony of Turner and Backes, they should have an opportunity

to cross-examine the witnesses and test the credibility of their statements. In support of their contention, the plaintiffs suggest that Turner and Backes may have an interest in the outcome of the litigation. Turner in particular is a high-ranking employee of ADDSCO, and ADDSCO is contractually obligated to indemnify Matson for any judgment the plaintiffs may recover against Matson. Thus ADDSCO—Turner's employer— has the most to gain by Matson's success in this litigation. The plaintiffs argue that ADDSCO's financial interest may have some bearing on the credibility of Turner and Backes.

We believe that the point is well-taken. In this case the crucial issue is ADDSCO's knowledge of the dangerous characteristics of Fluid Film. Knowledge on the part of the company can be proved only by showing the state of mind of its employees. The court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind. Much depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue. See NLRB v. Smith Industries, Inc., 5 Cir. 1968, 403 F.2d 889, 895; Riley-Stabler Constr. Co. v. Westinghouse Electric Corp., 5 Cir. 1968, 401 F. 2d 526, 527 (Rives, J., specially concurring); Consolidated Electric Co. v. United States for Use and Benefit of Gough Industries, 9 Cir. 1966, 355 F.2d 437, 438–439; 3 W. Barron & A. Holtzoff, *supra*, § 1232.2.

Because we believe that the pleadings, affidavits, and depositions present conflicting evidence from which a jury could reasonably reach different conclusions, we hold that the district court erred in granting Matson's motion for summary judgment. Of course, in holding that the case should go to trial, we do not rule out the possibility of a directed verdict. At the close of the trial, after the parties have presented all their evidence and have been afforded ample opportunity for cross-examination, it may be that there can be only one reasonable inference drawn from the facts. In that case the district court is free to direct a verdict for the proper party. *See* Harvey v. Great Atlantic & Pacific Tea Co., 5 Cir. 1968, 388 F.2d 123, 126; Robbins v. Milner Enterprises, 5 Cir. 1960, 278 F.2d 492, 496–497. "On the other hand, this may prove to be a case when the underlying facts are susceptible of conflicting inferences, and the choice must be left to the jury." Stanley v. Guy Scroggins Constr. Co., 5 Cir. 1961, 297 F.2d 374, 378. We hold now only that on the basis of the evidence presented, a genuine issue as to a material fact exists that precludes the entry of summary judgment in Matson's favor.

Reversed and remanded.