865 F.2d 1269
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John M. STEPHENS, John Rose, Gregory Randolph, Ricky Young,
Darryl Turner, James Reese, Elliott Angle, Johnnie
Packer, John D. Robinson, Gregory
Whitaker, and Hillard Fulton,
Plaintiffs-Appellants,
v.
STATE OF MICHIGAN; Northville Regional Psychiatric
Hospital; Civil Service Commission of State of
Michigan; John F. Hueni, Jr.; and John
Reynolds, Defendants-Appellees.
 No. 87-1716.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and CARL B. RUBIN, Chief District Judge.*
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 The plaintiffs-appellants in this discrimination case appeal the district court's judgment dismissing them as parties to this action for failing to meet discovery deadlines. The remaining plaintiff-appellant who was not dismissed as a party appeals the court's summary judgment order dismissing his claims filed pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e et seq. (1982). Because we believe that the district court was justified in dismissing as parties the plaintiffs-appellants who failed to meet the discovery deadlines, we affirm the district court's judgment in this respect. However, because we find that there exists a genuine issue of material fact as to the remaining plaintiff-appellant's disparate impact claim, we reverse the district court's summary judgment in favor of the defendants.
 
 I.
 
 2
 This appeal involves three separate actions filed in the United States District Court for the Eastern District of Michigan that were consolidated for purposes of discovery and trial. On November 5, 1981, plaintiff-appellant John Stephens filed his complaint in Case No. 81-4103, on behalf of himself and all others similarly situated, against the State of Michigan; the Michigan Civil Service Commission ("Commission") and its chief administrator, John Hueni; and the Northville Regional Psychiatric Hospital ("Northville") and its director, John Reynolds. Stephens alleged that male resident care aides ("RCA's") in grades III-B through V-B at Northville performed duties that were comparable to those performed by the overwhelmingly female licensed practical nurses ("LPN's") who received higher pay and better benefits. Stephens alleged that the defendants' failure to reclassify the Northville RCA positions violated his constitutional rights to due process and equal protection under the fourteenth amendment to the United States Constitution and 42 U.S.C. Sec. 1983 (1982). He also alleged that the defendants' actions violated the Equal Pay Act, 29 U.S.C. Sec. 206 (1982), his implied contract of employment, and Commission rules regarding pay rates.
 
 
 3
 On December 7, 1982 and February 28, 1983, twelve black male RCA's on Northville's forensic ward, including Stephens, brought two separate cases (Nos. 82-4596 and 83-0723) on behalf of themselves and all others similarly situated.[1] The complaints in these actions named the same defendants that Stephens named in his earlier suit. The complaints alleged that the RCA's on Northville's forensic ward performed duties that were comparable to those performed by the predominantly white forensic security aides ("FSA's") at the Michigan Center for Forensic Psychiatry ("CFP"), who also received higher pay and better benefits. The plaintiffs in these cases also alleged that the implementation and maintenance of the defendants' civil service classification system resulted in the FSA's receiving higher pay and enjoying better working conditions than the RCA's on Northville's forensic ward. They alleged that these practices violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e et seq. (1982) and 42 U.S.C. Sec. 1981 (1982).
 
 
 4
 In April of 1982, Stephens entered into a settlement agreement with the Commission which resolved a complaint that he filed with the EEOC. Pursuant to that agreement, the Commission conducted a review of the RCA positions on Northville's forensic ward in comparison with other RCA positions in the Michigan mental health system, and with the FSA positions at CFP. In connection with that review, Ann Kroneman, a Program Manager at the Commission, visited Northville and interviewed administrators and employees on the forensic ward. On July 26, 1982, Kroneman issued a report concluding that the RCA positions on Northville's forensic ward were properly classified and should not be reclassified as FSA positions. Kroneman found that the RCA's on Northville's forensic ward did not perform duties significantly different than the duties performed by other RCA's in the Michigan mental health system, and that the FSA's at CFP performed duties significantly more difficult than those performed by the RCA's on Northville's forensic ward.
 
 
 5
 On October 20, 1983, the district court consolidated these cases for purposes of discovery and trial and assigned them to Judge Philip Pratt. Discovery moved forward in the consolidated actions and, in June of 1985, the defendant's submitted their first set of interrogatories to the plaintiffs. Among other things, the defendants sought information regarding the plaintiffs' qualifications for LPN and/or FSA positions, statistical or other evidence of discrimination, and the specific facts and documentation upon which the plaintiffs intended to rely to support their claims.
 
 
 6
 On November 24, 1985, some five months later, having received no responses from the plaintiffs, the defendants filed a motion to compel answers to the interrogatories. In resolution of that motion, plaintiffs' counsel stipulated that all answers would be filed by January 20, 1986, and that any plaintiff not filing answers by that date would be dismissed as a party to the lawsuit. The district court approved that stipulation and entered an order to that effect. Volume I, J.App. at 306-08. Despite the stipulation and order, however, only three plaintiffs--Packer, Whitaker and Reese--filed answers to the interrogatories on or before January 20, 1986. Eight more plaintiffs filed answers on January 21, 1986, and one of the plaintiffs, Rodney Robinson, did not respond at all.
 
 
 7
 The defendants, citing certain of the plaintiffs' alleged failure to properly answer the interrogatories and their failure to meet the January 20 response deadline, moved to dismiss nine of the twelve plaintiffs' claims on January 23, 1986. In an order dated March 25, 1986, Judge Pratt dismissed Rodney Robinson, the plaintiff who filed no response, and ordered eight others to "respond fully and completely to the interrogatories submitted to them and supply defendants with all attachments to which they refer in their answers, no later than April 4, 1986." J.App. at 358. Judge Pratt's order provided that any plaintiff who failed to respond by April 4 would be dismissed from the action. Finally, Judge Pratt ordered the plaintiffs to pay the defendants costs in the amount of $500.[2]
 
 
 8
 Although the plaintiffs filed more complete answers to the first set of interrogatories before the April 4 deadline, the defendants still were not satisfied with the plaintiffs' responses. On May 2, 1986, the defendants therefore submitted a second set of interrogatories to all but one of the remaining plaintiffs, allegedly in order to clarify answers previously given. When the plaintiffs had not responded to the second set of interrogatories after some eight months, the defendants again filed a motion to compel answers or dismiss the complaints. On February 13, 1987, Judge Hackett entered an order requiring the plaintiffs to provide answers to the second set of interrogatories on or before March 31, 1987. That order provided that the plaintiffs' failure to respond by the deadline would result in the dismissal of all non-responding plaintiffs except Hillard Fulton, who had not been served with a second set of interrogatories.
 
 
 9
 A copy of Judge Hackett's order was served upon Marilyn Madorsky, an attorney at the law firm representing the plaintiffs in this action and counsel of record for the plaintiffs. Madorsky filed her appearance in this action on April 23, 1982 and never requested leave of the court to withdraw her appearance. According to the plaintiffs, at the time that Madorsky was served with the order, she had not been active in this litigation for at least two years. The plaintiffs allege that Madorsky therefore asked her secretary to route the order to John Emery, another attorney in the same law firm, who was lead counsel for the plaintiffs. The plaintiffs allege that a clerical error prevented Emery from receiving a copy of the order, and that he did not learn of its existence until April 8, 1987.
 
 
 10
 When none of the plaintiffs responded to the second set of interrogatories by March 31, the district court entered an order dated April 8, 1987 dismissing all plaintiffs except Fulton. Within one week after the district court entered its order of dismissal, all of the plaintiffs filed responses to the second set of interrogatories.
 
 
 11
 On April 14, 1987, the nine plaintiffs who were dismissed filed a motion for relief from the district court's order of dismissal pursuant to Fed.R.Civ.P. 60(b)(1) and (6). The plaintiffs argued that their failure to timely respond to the second set of interrogatories was due to "excusable neglect" within the meaning of Rule 60, and that, therefore, the district court should reinstate their claims against the defendants. However, on June 12, 1987, Judge Hackett denied the plaintiffs' motion, noting their "consistent failure to comply with discovery requests absent a court order." Volume IV, J.App. at 1262. Judge Hackett concluded that "[b]ecause the plaintiffs failed to comply with the court's order after they had been properly served [under Fed.R.Civ.P. 5(b) ], dismissal of their claims was proper." Id.
 
 
 12
 Since the district court's order left Fulton as the only remaining plaintiff, the court directed the defendants to prepare a synopsis of their previously filed summary judgment motions as they specifically related to Fulton. After the defendants filed that synopsis, the district court issued a memorandum opinion granting the defendants' summary judgment motion and dismissing Fulton's claims. The court concluded that Fulton failed to establish a prima facie case of race discrimination, in part because "the race, sex or national origin of an individual occupying a particular position [had] no relevance to the classification of a position" under the Michigan classification system. Volume IV, J.App. at 1265. While most of the court's analysis pertained to liability under a disparate treatment theory, the court concluded that "[p]laintiff [was] unable to show, either by statistical evidence or personal knowledge, that race was a factor in his classification." Id. at 1265-66 (emphasis added).
 
 
 13
 On July 15, 1987, all of the plaintiffs who were dismissed from this action (except Rodney Robinson, who was dismissed for completely failing to respond to the first set of interrogatories), filed notice of appeal from the district court's denial of their Rule 60 motion. On the same date, Fulton filed notice of appeal from the district court's summary judgment dismissing his Title VII claim.
 
 II.
 
 14
 It is well settled that the granting of a motion to set aside a judgment under Fed.R.Civ.P. 60 is a matter addressed to the sound discretion of the trial court, and that the trial court's determination should not be reversed except for abuse of discretion. See In Re Salem Mortgage Co., 791 F.2d 456, 459 (6th Cir.1986).
 
 
 15
 Rule 60 of the Federal Rules of Civil Procedure provides in part:
 
 
 16
 (b) On motion and upon such terms as are just, the court may relieve a party of his legal representative from a final judgment, order or proceeding for the following reasons:
 
 
 17
 (1) Mistake, inadvertence, surprise, or excusable neglect; ... or
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 (6) any other reason justifying relief from the operation of the judgment.
 
 
 21
 In Salem Mortgage Co., supra, this court stated that:
 
 
 22
 "[A] Rule 60(b) Motion must be equitably and liberally applied to achieve substantial justice. Doubt should be resolved in favor of a judicial decision of the merits of a case, and a technical error or a slight mistake by plaintiff's attorney should not deprive plaintiff of an opportunity to present the true merits of his claims. The countervailing factors are the defendants' and society's interests in the finality of judgments and the avoidance of prejudice ... The plaintiff should not be punished for his attorney's mistake absent a clear record of delay, willful contempt or contumacious conduct."
 
 
 23
 Id. at 459-60 (quoting Blois v. Friday, 612 F.2d 938, 940 (5th Cir.1980)) (emphasis added and citations omitted).
 
 
 24
 Applying this standard to the instant case, the district court did not abuse its discretion in refusing to set aside its order of dismissal. The plaintiffs completely failed to respond either to the first or second set of interrogatories until ordered to do so by the court. When Judge Pratt ordered the plaintiffs to respond to the first set of interrogatories by January 20, 1986, seven of the plaintiffs filed their responses on January 21 and one plaintiff failed to respond at all. When Judge Hackett ordered the plaintiffs to respond to the second set of interrogatories by March 31, 1987, all of the plaintiffs failed to respond by the deadline. Although the plaintiffs filed their responses only two weeks late, and although the defendants suffered little or no prejudice due to the plaintiffs' tardy response, the plaintiffs have exhibited a clear record of delay in this case sufficient to justify the district court's dismissal of their claims.
 
 III.
 
 25
 Hillard Fulton, who was the only plaintiff not dismissed for failure to meet discovery deadlines, appeals the district court's summary judgment order dismissing his Title VII claims against the defendants.
 
 
 26
 Since the district court dismissed Fulton's claims via summary judgment order, this court must view the facts in a light most favorable to him. See Sequoyah v. Tennessee Valley Authority, 620 F.2d 1159, 1161 (6th Cir.), cert. denied, 449 U.S. 953 (1980). Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to survive a summary judgment motion, the motion's opponent must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986).
 
 
 27
 Under a disparate impact theory of liability under Title VII of the Civil Rights Act of 1964, "practices, procedures, or tests neutral on their face, and even neutral in terms of intent," cannot be maintained if they have a substantially disproportionate impact upon a group protected by Title VII, and are not sufficiently job-related. See Griggs v. Duke Power, 401 U.S. 424, 430-31 (1971). The plaintiff in a disparate impact case bears the threshold burden of showing that the challenged practice or procedure has a substantially disproportionate impact upon his protected group. See Rowe v. Cleveland Pneumatic Co., 690 F.2d 88, 93 (6th Cir.1982); Rocha v. Great American Insurance Co., 850 F.2d 1095, 1101 (6th Cir.1988).
 
 
 28
 Fulton first contends that the district court erred by failing to even consider his Title VII claim under a disparate impact theory of liability. This contention is without merit. While most of the district court's analysis pertains to a disparate treatment theory, the court stated that the "[p]laintiff [was] unable to show, either by statistical evidence or personal knowledge, that race was a factor in his classification." Volume IV, J.App. at 1265-66 (emphasis added). The district court's reference to statistical evidence indicates that the court considered and rejected Fulton's Title VII claim under both theories.
 
 
 29
 We conclude, however, that the district court erred in granting the defendants' motion for summary judgment as to Fulton's disparate impact claim. The evidence in this case shows that the FSA's at CFP are overwhelmingly white, see Volume IV, J.App. at 848, and the defendants have not contested Fulton's assertion that the RCA's on Northville's forensic ward are almost exclusively black. Moreover, the defendants concede that they have refused to reclassify the relevant Northville RCA positions to make their pay, benefits and working conditions commensurate with the FSA's at CFP. Thus, Fulton has shown that facially neutral employment practices, the Commission's initial classification of the Northville RCA positions and failure to reclassify those positions, have a substantially disproportionate impact on his racial group. When we view this evidence in a light most favorable to Fulton, and consider the unusual practice at Northville of housing all of the male forensic patients on one ward, see Kroneman report at p. 1, we believe that there exists a genuine factual issue as to whether the Commission's classification system has operated to discriminate against Fulton. We therefore conclude that the district court erred in granting the defendants' summary judgment motion.
 
 IV.
 
 30
 For the above-stated reasons, we AFFIRM in part, REVERSE in part and REMAND for further proceedings not inconsistent with this opinion.
 
 
 31
 RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.
 
 
 32
 I concur in that part of the court's opinion which affirms the district court's dismissal of plaintiffs' claim as a result of discovery abuses. I respectfully dissent, however, from that portion of the opinion which overrules the district court's grant of summary judgment as to the one remaining plaintiff.
 
 
 33
 The court concludes that the district court erred only in granting the defendants' motion as it related to plaintiff Fulton's disparate impact claim. I have two problems with this. First, Fulton nor any of the other plaintiffs ever pled a disparate impact claim. Even if the most liberal construction is given to the pleadings, it is impossible to read into it a disparate impact theory. The complaint filed in this case represents a classic example of pleading disparate treatment.
 
 
 34
 Second, and perhaps more importantly, even if one were to construe the complaint as stating a disparate impact claim, the plaintiffs offered nothing in support of such a theory. The court makes far too much of the fact that the plaintiffs, who are classified as RCAs at Northville, are primarily black; whereas the FSAs at the Center for Forensic Psychiatry in Ypsilanti, Michigan, are predominantly white. Although in some circumstances that would be a factor that bears closer scrutiny, here the claim is not one that black employees have been segregated at the Northville facility but, rather, that the work that they are doing there should be compensated for at a higher rate. There is no "facially neutral policy" that has even been identified as having a causal relationship to the racial makeup of the work force at Northville as opposed to the work force at Ypsilanti. These plaintiffs are not complaining about where they work but are complaining about the amount that they are paid.
 
 
 35
 The record that was before the court at the time the summary judgment motion was granted is replete with factual information, including a study done by the EEOC to the effect that there is a differentiation in job duties that accounts for the differential in pay at Ypsilanti and Northville. Neither Fulton nor his companion plaintiffs before they were dismissed out have come up with anything to indicate that they are able to refute this non-discriminatory explanation offered by the employer. Under such circumstances, the defendants are entitled to a summary judgment. The district court noted that Fulton was unable to show, either by statistical or other evidence, that race was a factor in the pay received by an RCA. In addition to failing to show that race was a factor in his pay rate, Fulton never requested that the Michigan Civil Service review the classification of his position, never applied for a job as an FSA, and never took the civil service examination to be considered for appointment to the FSA classification. Under this set of circumstances, the district court should be affirmed.
 
 
 36
 CARL B. RUBIN, District Judge, concurring.
 
 
 37
 I concur with the Court's opinion which affirms the District Court's dismissal of plaintiffs' John M. Stephens, John Rose, Gregory Randolph, Ricky Young, Darryl Turner, James Reese, Elliott Angle, Johnnie Packer, John D. Robinson, and Gregory Whitaker claims as a result of discovery abuses. With that portion of opinion expressed by Judge Jones reversing the District Court's grant of summary judgment against plaintiff Hillard Fulton I write only to express a limited concurrence.
 
 
 38
 The disposition of discrimination cases, such as the present one, raise unique and perplexing problems. The underlying essence of any discrimination, whether it be a latent impact upon a class or a patent treatment of an individual, is intent. The intent or state of mind of individuals is not a readily ascertainable fact. Even if such matters are discerned in the discovery process, it is even more difficult for them to be submitted to a court in pleadings which seek a dispositive adjudication.
 
 
 39
 A District Court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of intent or state of mind. Mahronic v. Walker, 800 F.2d 613, 617 (6th Cir.1986); Croley v. Matson Navigation Co., 434 F.2d 73 (5th Cir.1970). The triers of fact should be afforded the opportunity to observe the demeanor of witnesses during direct and cross examination when subjective motives or states of mind are at issue. Consolidated Elec. Co. v. United States, 355 F.2d 437, 438-439 (9th Cir.1966). The credibility of these witnesses may be central to the outcome of the case. Summary judgment simply does not provide an appropriate means for resolving such determinations of character. Ness v. Marshall, 660 F.2d 517 (3d Cir.1981). Any such findings usually entail the drawing of factual inferences, upon which reasonable men might differ, a function traditionally left to the jury. Id. See Prochaska v. Marcoux, 632 F.2d 848, 851 (10th Cir.1980), cert. denied, 451 U.S. 984 (1981). (Questions of intent, which involve intangible factors including witness credibility are matters for the consideration of the fact finder after a full trial and are not for resolution by summary judgment.)
 
 
 40
 A review of the record leaves some doubt that Mr. Fulton can establish his case. He should not be denied the opportunity to try.
 
 
 41
 It is only for this narrow reason that I concur with Judge Jones.
 
 
 
 *
 Honorable Carl B. Rubin, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The twelve named plaintiffs in these actions were Stephens, John Rose, Gregory Randolph, Ricky Young, Darryl Turner, James Reese, Elliott Angle, Johnnie Packer, John D. Robinson, Gregory Whitaker, Hillard Fulton and Rodney Robinson. Although the three cases were filed as class action suits, class certification was denied in all three cases, see Volume IV, J.App. at 1367, and that denial is not challenged in this appeal
 
 
 [2]
 Shortly after Judge Pratt issued the March 25, 1986 order, he suffered a heart attack, making him unable to hear further proceedings in this case. The cases were then reassigned to Judge Barbara K. Hackett