# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | |
|---|---|
| VOLUNTEER BEER, INC., | ) |
| | ) |
| Plaintiff/Appellant, | ) Davidson Chancery No. 96-13-III |
| | ) |
| VS. | ) Appeal No. 01A01-9703-CH-00126 |
| | ) |
| | ) |
| RALPH W. JOHNSON, JR., | ) |
| | ) |
| Defendant/Appellee. | ) |

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

# FILED

**October 31, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

**G. KLINE PRESTON, IV**
Nashville, Tennessee
Attorney for Appellant

**LAURENCE M. McMILLAN, JR.**
**CUNNINGHAM, MITCHELL, HICKS & McMILLAN**
Clarksville, Tennessee
Attorney for Appellee

**REVERSED AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Plaintiff Volunteer Beer, Inc. (VBI), appeals the trial court's final judgment dismissing its claim for fraudulent registration of trademark against Defendant/Appellee Ralph W. Johnson, Jr. The trial court granted summary judgment to Johnson based on the court's conclusion that Johnson did not intend to deceive anyone when he made a false statement on his trademark application. We reverse because we conclude that Johnson's affidavit regarding his state of mind at the time he completed the trademark application was an insufficient basis upon which to grant summary judgment.

This lawsuit began in January 1996, when VBI filed a complaint against Johnson seeking declaratory and other relief. Specifically, VBI's complaint alleged that Johnson submitted an application to register the trademark Volunteer Beer to the Tennessee Secretary of State's office in August 1989; that Johnson falsely represented on his application that the mark was first used in Tennessee on August 18, 1989, the date of application; that the trademark Volunteer Beer, in fact, never was used in Tennessee by Johnson; that Johnson fraudulently procured registration of such trademark; and that VBI was the rightful owner of the Volunteer Beer mark. The complaint sought cancellation of Johnson's registration of the trademark, a declaration that VBI was the lawful registrant of the mark, and an award of damages pursuant to section 47-25-510 of Tennessee's Model Trademark Act.

Johnson filed an answer and counterclaim in which he sought damages for trademark infringement, an injunction against VBI's further use of the Volunteer Beer mark, and other relief.

VBI subsequently filed a motion for summary judgment contending, inter alia, that the undisputed facts showed that Johnson fraudulently obtained registration of the trademark Volunteer Beer.

Johnson also moved for summary judgment. Johnson's answers to interrogatories indicated that he had neither brewed Volunteer Beer nor made any sales of Volunteer Beer

2

in Tennessee.  Accordingly, in opposing VBI's motion for summary judgment, Johnson conceded that his registration of the Volunteer Beer mark was subject to cancellation because Johnson never had sold goods under the mark.  To rebut VBI's claim that he had fraudulently registered the Volunteer Beer trademark, however, Johnson filed a sworn affidavit in which he explained why he wrote August 18, 1989, as the date of first use on his trademark application:

> 2.      In 1989, I submitted an application to the Tennessee Secretary of State for registration of the mark VOLUNTEER BEER for use on Class 48 goods, malt beverages and liquors.  Originally, when I completed the blanks on the application form, I left blank the date of first use on the application. . . .

> 3.      Upon my inquiry regarding what was meant by the date of first use of the VOLUNTEER BEER mark, a female employee of the Tennessee Secretary of State's office instructed me to fill in the application date of August 18, 1989, this being the date I made this inquiry (which was in person at the Tennessee Secretary of State's office).  Based on this instruction, I wrote August 18, 1989, on the application as the date of first use. . . .

> . . . .

> 5.      I am not an attorney, nor was I represented by an attorney during the application and registration of the mark VOLUNTEER BEER.  I was unfamiliar with the provisions of Tennessee's trademark law and statutes at the time that I submitted my application.  In connection with the application process, I made no representations or declarations, verbally or in writing, that were false or fraudulent, nor was it my intention to mislead anyone in any way.  To the contrary, in stating the date of my first use of the mark VOLUNTEER BEER, I acted upon the advice of the representative of the Tennessee Secretary of State's office.

Based on the undisputed evidence that Johnson never used the trademark within the meaning of section 47-25-501(b)(1) of the Model Trademark Act, the trial court entered a judgment canceling Johnson's registration of the mark Volunteer Beer.  The trial court further ruled that VBI had priority in all of its trademarks bearing the Volunteer Beer mark by virtue of VBI's prior use of such mark.  Lastly, the trial court dismissed all of Johnson's counterclaims.

3

In its final judgment, the trial court dismissed VBI's remaining claim for damages under section 47-25-510 of the Model Trademark Act based on VBI's failure to submit any proof that Johnson made a false or fraudulent misrepresentation in his August 1989 trademark application. The trial court reasoned:

> The Model Trademark Act establishes liability against one who procures the filing or registration of a [trademark] "by knowingly making any false or fraudulent [representation]." [T.C.A.] § 47-25-510. The asserted misrepresentation is the insertion of "8-18-89" on the form where it asks for the date the applicant first used the mark.
>
> Johnson's version of how that happened is undisputed. He typed in the information requested by the fill-in-the-blank form and took it to the Secretary of State's office. He did not fill out the "first used" blank as he was unsure what "used" meant. When he asked someone in the Secretary of State's office what was meant by "first used," Johnson was instructed to insert the then current date. He did so.
>
> Use, according to the Act, means that the goods were sold or otherwise distributed. [T.C.A.] § 47-25-501(b)(1). Johnson's version of the beer had never been sold or distributed, so when he filled in the blank with a date, he made a false statement. The question is . . . whether the false statement [was] made "knowingly."
>
> The Model Trademark Act does not describe "knowingly." Courts defining the term have usually done so in the context of criminal statutes that require that acts be committed "knowingly" before they constitute crimes. In that context, knowingly means that the person charged possessed facts which made him aware he could not lawfully do the act charged. State v. Summers, 692 S.W.2d 439, 446 (Tenn. Crim. App. 1985).
>
> The damage section of the Model Trademark Act is captioned "fraudulent registration" and refers to "any other fraudulent means." This implies that for a false statement to have been made knowingly, it must have been done with some intent to deceive someone.
>
> There is no evidence that Johnson's misrepresentation that he had used the [trademark] was done with any intent to deceive anyone. To the contrary, he did not know what to put down and only followed the instruction or suggestion of someone in the Secretary of State's office. Johnson was obviously uncertain what "used" meant. His misrepresentation made out of ignorance was not made knowingly.

On appeal, the sole issue for this court's consideration is whether the trial court erred in dismissing VBI's claim for fraudulent registration of trademark under section 47-25-510 of the Model Trademark Act.

4

We first address the trial court's interpretation of the statutory requirements of section 47-25-510. That section provides that

> Any person who, on behalf of such person or any other person, procures the filing or registration of any mark in the office of the secretary of state under the provisions hereof, by knowingly making any false or fraudulent representation or declaration, verbally or in writing, or by any other fraudulent means, shall be liable to pay all damages sustained in consequence of such filing or registration, to be recovered by or on behalf of the party injured thereby in any court of competent jurisdiction.

T.C.A. § 47-25-510 (1988).

Other states have adopted virtually the identical provision from the Model Trademark Act. See Gragg v. Rhoney, 884 P.2d 443, 446-47 (Kan. Ct. App. 1994) (citing K.S.A. 81-120); Vance v. Huff, 568 So. 2d 745, 750-51 (Ala. 1990) (citing Ala. Code 1975, § 8-12-15); Brewer v. Egyptian Sports, Inc., 462 N.E.2d 520, 525 (Ill. App. Ct. 1984) (citing Ill. Rev. Stat. 1981, ch. 40, par. 18). Our research, however, has revealed only one decision in which a state court interpreted the statute's requirement of "knowingly making any false or fraudulent representation or declaration." In Gragg v. Rhoney, 884 P.2d 443, 449 (Kan. Ct. App. 1994), the court indicated that, in order to be fraudulent within the meaning of the statute, "an untrue statement of fact must be known to have been untrue by the party making it and must have been made with the intent to deceive or recklessly made with disregard for the truth." In accordance with this construction, we hold that the imposition of liability under section 47-25-510 requires proof of three elements: (1) that the applicant's representation or declaration was false; (2) that the applicant knew the representation or declaration was false; and (3) that the applicant made the representation or declaration either with the intent to deceive or with reckless disregard for the truth.

In interpreting the statute, the trial court ruled that, in order for a false or fraudulent representation to be actionable, the representation must have been made with intent to deceive. We conclude that this ruling was not entirely correct because, under the foregoing standard, the imposition of liability under section 47-25-510 does not depend upon a showing of intent to deceive; it is sufficient if the representation or declaration was

5

made with reckless disregard for the truth, a lesser standard than that applied by the trial court.

Our delineation of the proper standard to be applied under section 47-25-510, however, does not end our inquiry because we still must determine, in light of the appropriate standard, whether the trial court erred in granting Johnson's motion for summary judgment. We begin our analysis of this issue with the premise that

> [W]here a claim of fraud is presented, ordinarily only upon a full trial of the action can the issue properly be developed. As a general rule, summary judgment is not an appropriate procedure for the disposition of such an issue.

Fowler v. Happy Goodman Family, 575 S.W.2d 496, 49 (Tenn. 1978). This is because "[t]he issue of fraud, by its nature, is one which requires for determination the actual hearing and viewing of witnesses whose credibility is of paramount concern for the trier of facts." Long v. State Farm Fire & Cas. Co., 510 S.W.2d 517, 519 (Tenn. App. 1974).

For similar reasons, summary judgment also is inappropriate "in cases where the outcome hinges squarely upon the state of mind, intent, or credibility of the witnesses." Knapp v. Holiday Inns, Inc., 682 S.W.2d 936, 941-42 (Tenn. App. 1984). As one court explained,

> The court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind. Much depends upon the credibility of the witnesses testifying as to their own state of mind. In these circumstances the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue.

Croley v. Matson Navigation Co., 434 F.2d 73, 77 (5th Cir. 1970), quoted in McDowell v. Moore, 863 S.W.2d 418, 421 (Tenn. App. 1992); Knapp v. Holiday Inns, Inc., 682 S.W.2d 936, 942 (Tenn. App. 1984). In particular, summary judgment should not be granted based upon the affidavit of an interested witness if the finder of fact would be at liberty to disbelieve the assertions contained in the affidavit. Knapp, 682 S.W.2d at 942.

6

In McDowell v. Moore, 863 S.W.2d 418 (Tenn. App. 1992), for example, the defendant was sued for defamation. The defendant filed a motion for summary judgment, citing evidence which, he argued, conclusively established that the plaintiff was a public figure and that the matters complained of were published without malice. Id. at 419. In support of his motion, the defendant attached an affidavit in which he asserted that he believed the incidents described by him to be true. Id. at 420. The trial court granted the motion, but this court reversed. Citing Knapp and Croley, supra, this court reasoned:

> [W]e are called upon to determine whether the affidavit of the defendant, . . . wherein he deposed that he believed and continues to believe that the incidents described by him were true, is sufficient to establish a lack of malice. While such testimony, if accredited by a trier of fact, would be sufficient to support such a finding, we cannot agree that, without more, such a finding is appropriate on motion for summary judgment.
>
> . . . .
>
> In this case, the credibility of the affiant, . . . is clearly in issue. . . . [H]e is a party and his testimony must be weighed in the balance against his natural bias, prejudice or interest in the outcome of the case. . . .

McDowell, 863 S.W.2d at 420-21.

Although this case presents a close question, we conclude that the trial court erred in granting summary judgment based on Johnson's affidavit. In his affidavit, Johnson swore that he was unfamiliar with the provisions of Tennessee's trademark statutes at the time he submitted his application; that he was acting upon the advice of an employee of the Secretary of State's office when he wrote August 18, 1989, on the application as the date of first use; and that he did not intend to mislead anyone in any way. If ultimately believed by the finder of fact, these assertions well might establish a defense to VBI's claim for fraudulent registration of trademark under section 47-25-510 of the Model Trademark Act. Nevertheless, we conclude that these assertions did not entitle Johnson to summary judgment.

As we explained previously, in order to succeed on its claim for fraudulent registration of trademark, VBI ultimately must prove that Johnson acted either with the intent to deceive or with reckless disregard for the truth. The foregoing authorities reveal

7

that summary judgment is particularly inappropriate in fraud cases such as this where the outcome hinges upon the defendant's state of mind, intent, or credibility. The critical assertions contained in Johnson's affidavit all relate to Johnson's subjective state of mind or intent at the time he made the false representation on his trademark application. Moreover, Johnson, as the defendant to this action, is by definition an interested witness whose testimony the finder of fact would be entitled to disbelieve. The fact-finder, for example, might reject Johnson's testimony that he was unfamiliar with Tennessee trademark law, as well as his testimony that he was unaware that he had made a false statement on the trademark application.

For purposes of these summary judgment proceedings, we accept as true Johnson's sworn factual assertion that an employee of the Secretary of State's office instructed him to fill in August 18, 1989, as the date of first use on the trademark application.[1] Even if accepted as true, however, this fact is not determinative of Johnson's state of mind or intent when he completed the application. The evidence was undisputed that Johnson never sold goods under the Volunteer Beer mark. It is possible, therefore, that Johnson initially left blank the date of first use on the application because he knew he never had used the mark.[2] Issues regarding Johnson's state of mind and credibility should be resolved by the finder of fact in an evidentiary hearing and not by summary disposition.

In conclusion, we reiterate that, if believed by the fact-finder, the assertions contained in Johnson's affidavit well might provide a defense to VBI's claim for fraudulent

---

[1] In the trial court, VBI challenged this assertion by filing the affidavit of Mary E. Costner, the manager of the Statutory Filing Department at the Secretary of State's office in Nashville. In her affidavit, Costner asserted that

> It is the policy of our Department not to give legal advice or to interpret the meaning or requirements of the application for potential registrants. Our policy is to advise a registrant to consult with an attorney as to any questions they may have. We do not give legal advice or suggest how to complete trademark applications.

Costner, however, did not work at the Secretary of State's office in August 1989, when Johnson completed his trademark application. Costner began working at that office in October 1990.

[2] Under the Model Trademark Act, a trademark is deemed to be "used" on goods "when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto and such goods are sold or otherwise distributed in the state." T.C.A. § 47-25-501(b)(1) (1988).

registration of trademark. At this point in the proceedings, however, it was premature to grant summary judgment based on Johnson's sworn assertions as to his state of mind at the time he completed the trademark application.

The judgment of the trial court is hereby reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellee, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.