[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 747 
This Court has consolidated appeals from two summary judgments[1] that were entered in favor of numerous defendants and against the plaintiffs, Victor and Mildred Vance, in a case involving allegations of promissory fraud, breach of contract, wrongful ouster from a partnership, and a number of other claims. The facts giving rise to the Vances' various claims are complex. Therefore, the basic facts surrounding this case will be set out, with a more detailed exposition of the pertinent facts to be supplied as each issue is addressed.
In 1986 John Huff, Victor Vance, and Kiefer Hobby formed a business association for the purposes of developing and managing a manufacturers' outlet shopping center in Opelika and for developing or managing similar centers in other parts of the State. No written agreement was executed by these parties, and there is a dispute as to whether they intended to form a partnership or to form a different type of business organization. Notwithstanding that dispute, it is clear that Huff was to provide the capital needed for the association's projects and that Vance and Hobby were to provide labor and services.
Vance's primary responsibilities were to obtain the necessary land, promote the outlet center, and secure tenants. Hobby was to oversee construction of the center. In return for their services, Huff was to receive 85% of any profits; Vance was to receive 10%; and Hobby was to receive 5%. However, Hobby left the association before construction began, and Vance contends that he was promised Hobby's 5% of the profits by Huff. Vance also contends that he was promised a position as manager of the center, for which he was to receive an annual salary of $52,000. In September 1986, Stephen Lowitz and Roberto Boltt joined the association. Their primary function was to provide additional capital, but they withdrew from the association in November 1986.
It is difficult to determine from the record what type of business organization the parties intended to form. There was no written partnership agreement, certificate of limited partnership, or evidence of incorporation. Huff contends that the parties agreed to wait and determine what type of organization would best fit their needs, but that, due to Vance's departure from the association, that choice was never made. Vance argues that they formed a partnership, and his position is supported by Hobby's deposition testimony. Lowitz and Boltt were named as defendants but have not submitted briefs to this Court, and their involvement is minimal.[2]
However, a review of their deposition testimony *Page 748 
seems to support Huff's position that no definite type of organization was agreed on.
For the purposes of determining the propriety of the summary judgments, this Court concludes that Vance presented substantial evidence that a partnership was formed, albeit an informal one. The parties agreed to pursue the common goal of developing an outlet center, agreed to share profits, and shared management responsibilities. There is no settled test for determining the existence of a partnership. That determination is made by reviewing all the attendant circumstances, including the right to manage and control the business. Ala. Code 1975, § 10-8-20; McCrary v. Butler,540 So.2d 736 (Ala. 1989).
Mildred Vance also formed a partnership with Huff, known as H V Investment Company ("H V"). H V was formed to manage a shopping center called the Market Place, which was located in Baldwin County. They executed a written agreement, stating that Huff was to receive 85% of any profits, with the remaining 15% going to Mildred. In order to finance the renovation and the operation of the center, Huff and Mildred borrowed money from a savings and loan association, giving a promissory note in exchange.
Victor Vance and Huff began to have disagreements over the way their alleged partnership was being run and, according to Vance, over his share of the management responsibilities and his future duties. In March 1987, Vance tendered a letter to Huff expressing a desire to leave the partnership. Soon after that letter was written, Vance's involvement with the partnership ended. Vance argues that he was wrongfully forced out of the partnership, but Huff contends that he voluntarily abandoned it. Also in early 1987, Mildred Vance and Huff executed a document wherein Mildred assigned her 15% interest in H V to Huff. In May or June 1987, Huff and Vance unsuccessfully attempted a reconciliation, and in December 1988 Victor and Mildred filed a multi-count complaint against Huff and a number of other defendants. The trial court entered summary judgment in favor of all of the defendants on all of the counts.
At the outset, we note that the Vances' complaint was filed after June 11, 1987, the effective date of Ala. Code 1975, §12-21-12. Therefore, the standard of review on the motions for summary judgment was the "substantial evidence rule." Posey v.Posey, 545 So.2d 1329, 1333 (Ala. 1989). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the facts sought to be proved." Thomasv. Principal Financial Group, 566 So.2d 735, 738 (Ala. 1990);West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
 Issue I
Vance alleged that Huff and other members of the partnership promised him lifetime employment as the manager of the outlet center and then breached that "contract." There are no written offers of employment in the record, and Vance's allegation is based on the following statements that he contends were made to him by members of the alleged partnership:
 "This is the last job you'll — or the last project you'll ever need, or the last thing you'll ever do."
". . . .
"This is your retirement plan."
". . . .
 "You're aware that you're going to make more money than you'll ever make in your life."
However, Vance conceded during his deposition that there was never any discussion among the partnership's members of an employment contract. In addition, Vance's deposition testimony reveals that he was not entirely sure of the nature of the promises that he alleges were made:
 "Q: Did Mr. Huff ever say to you that either he, Huff Investments, or USA Outlet Center would provide you with permanent, lifetime employment?
 "A: I don't think you could say lifetime, because we don't know what lifetime is, *Page 749 
one year, 10 years, or 20 years, but there was permanent employment, yes."
". . . .
 "Q: Mr. Vance, are you swearing under oath that John Huff used the words 'permanent employment'?
 "A: No, sir, he didn't use the word 'permanent,' but 'lifetime,' or to that effect."
". . . .
 "A: I think you can arrive at the same phrasing without using the word 'permanent,' and you're asking me to use the word 'permanent,' which I'm not sure was used. I cannot swear that it was or not, but you're asking me to use a word 'permanent,' a specific word 'permanent,' and what I'm relating to you is the other statements that were made which give the same definitive term."
As this Court noted in Harrell v. Reynolds Metals Co.,495 So.2d 1381, 1385-86 (Ala. 1986):
 "In the commercial context, contracts of permanent (lifetime) employment are unusual, extraordinary, [and] relatively rare. . . ."
In a case applying Alabama law, the Eleventh Circuit Court of Appeals recognized that the burden on a plaintiff claiming that he was promised permanent or lifetime employment is unusually heavy:
 "[A]n offer for lifetime employment must be expressed in clear and unequivocal terms before a court will conclude that an employer intended to enter into such a weighty obligation."
Chastain v. Kelly-Springfield Tire Co., 733 F.2d 1479, 1484
(11th Cir. 1984), citing Alabama Mills, Inc. v. Smith, 237 Ala. 296,186 So. 699 (1939), and other cases.
After reviewing the alleged promises relied on by Vance, this Court concludes that those statements cannot be construed as "clear and unequivocal" offers of lifetime or permanent employment. Chastain, supra. Instead, they appear to have been assurances that Vance's prospective job as the manager of the outlet center and his involvement with the partnership would be lucrative. As such, they are not "substantial evidence" in support of his claim, and the entry of summary judgment was proper as to this issue.
 Issue II
Vance also alleged that he was wrongfully forced out of the partnership that he had formed with Huff and Hobby and was therefore entitled to: (1) rescind the partnership agreement; (2) receive an accounting; and (3) petition the court for an order of dissolution. As stated earlier, this Court has concluded that Vance presented evidence showing the formation of a partnership. However, he did not produce substantial evidence that supports his claim that he was forced out of the partnership against his will.
With his motion for summary judgment, Huff attached a letter given to him by Vance dated March 11, 1987. In that letter Vance stated that he believed that his ability to contribute to the partnership was deteriorating, and he expressed a desire to withdraw. In addition, Vance testified during his deposition that during this period he discussed the possibility of employment with Lowitz after Lowitz had also withdrawn from the association:
 "I just told him that I was leaving the USA Outlet Center project, that Mr. Huff and I had difficulty. . . ."
This evidence supports Huff's assertion that Vance voluntarily abandoned the partnership.
Under Ala. Code 1975, § 10-8-44, a partner can rescind a partnership contract if another party to the contract is guilty of fraud or misrepresentation. There is no evidence that Huff or the other defendants were guilty of fraud or misrepresentation. Moreover, this statute has been raised for the first time on appeal. Therefore, any claim presented subject to that statute cannot be reviewed by this Court.Defore v. Bourjois, Inc., 268 Ala. 228, 230, 105 So.2d 846, 847
(1958).
A partner is entitled to a formal accounting as to partnership affairs:
 1. If he has been wrongfully excluded from partnership business or possession of its property; *Page 750 
 2. If that right exists under the terms of the partnership agreement;
 3. If a copartner has breached his fiduciary duty; or
 4. If the surrounding circumstances would make an accounting just and reasonable.
Ala. Code 1975, § 10-8-47 and -48. As stated earlier, it appears that Vance voluntarily abandoned his partnership with Huff and the other defendants. In addition, there was no written partnership agreement and, thus, there is no evidence of an agreement giving Vance the right to an accounting. Finally, there has been presented no evidence that one of Vance's copartners breached a fiduciary duty, or that there are surrounding circumstances that would compel an accounting.
Vance also contends that he was entitled to a court-ordered dissolution of the partnership under Ala. Code 1975, § 10-8-92. That statute lists six circumstances that would require a dissolution, and Vance has not specified which, if any, of those circumstances apply to his case. In light of the informal nature of the partnership and Vance's voluntary abandonment of it, this Court concludes that the trial court's implicit finding that none of the statutory grounds for dissolution was present was proper.
Because Vance failed to present substantial evidence in support of his claim that he was wrongfully forced out of the partnership, the entry of summary judgment was correct as to that claim.
 Issue III
Vance also asserted a claim of promissory fraud against Huff. In essence, he alleged that Huff promised him a job as manager of the outlet center, as well as a percentage of the partnership's profits, but that at the time they were made Huff had no intention of honoring those promises.
The elements of promissory fraud are: (1) a misrepresentation; (2) of a material existing fact; (3) upon which the plaintiff justifiably relied; (4) which proximately caused injury or damage to the plaintiff. In addition to those elements, the plaintiff must also present evidence showing that at the time the defendant made the alleged misrepresentations, the defendant intended not to do the acts promised and intended to deceive the plaintiff. Coastal Concrete Co. v. Patterson,503 So.2d 824, 826 (Ala. 1987). The defendant's intent to deceive can be established through circumstantial evidence that relates to events that occurred after the alleged misrepresentations were made. Martin v. American MedicalInternational, Inc., 516 So.2d 640 (Ala. 1987).
Despite his allegation of fraud, Vance testified during his deposition that he believed that Huff was "sincere" when he made these alleged promises, but decided at a later date not to honor them. Absent substantial evidence showing a present intent to deceive on the part of the defendant, a claim of promissory fraud cannot stand. Coastal Concrete, supra. Vance's deposition testimony clearly contradicted his allegation of promissory fraud, and after a careful review of the record this Court has found no substantial evidence to support Vance's claim that, at the time the representations were made, Huff had a present intent to dishonor them or intended to deceive Vance. Therefore, the entry of summary judgment was proper as to that claim.
 Issue IV
Vance also contends that he originated the name "USA Outlet Center" and that Huff has used that name without his permission and thus has violated Ala. Code 1975, § 8-12-15, reproduced below:
 "Any person who shall for himself, or on behalf of any other person, procure the filing or registration of any mark in the office of the secretary of state under the provisions of this article, by knowingly making any false or fraudulent representation or declaration, verbally or in writing, or by any other fraudulent means, shall be liable to pay all damages sustained in consequence of such filing or registration, to be recovered by or on *Page 751 
behalf of the party injured thereby in any court of competent jurisdiction."
This statute prohibits the registration of a trademark or trade name through fraudulent means. It is not intended to create a cause of action for the use of a trade name without permission, the act that Vance complains of. In addition, the only evidence that Vance directs this Court's attention to concerning this claim is his affidavit. That affidavit and Mildred Vance's affidavit were stricken, at least in part, by the trial court because they contradicted the clear and unambiguous testimony given by the Vances during their depositions. In addition, neither of those affidavits is included in the record on appeal. Because the burden is on the appellant to present a record that contains sufficient evidence to warrant a reversal, Seidler v. Phillips, 496 So.2d 714 (Ala. 1986), and no such evidence was presented in regard to this claim, the entry of summary judgment is due to be affirmed as to that claim.
 Issue V
Counts six and seven of the complaint were claims asserted by Mildred Vance against Huff and H V, the partnership she formed with Huff. Those claims arose out of Mildred's assignment of her partnership interest in H V to Huff. She alleged that the assignment violated the terms of the H V partnership agreement and was procured through the use of misrepresentations by Huff, wherein he allegedly promised Mildred that she would receive 15% of any profits if the shopping center that appears to have been H V's sole asset was sold; that she would no longer be liable on the note that she and Huff signed; and that Huff would sell the shopping center to the Vances if they could obtain financing. In the complaint Mildred asked for a dissolution of H V, an accounting, damages, and the removal of her name from the note.
Mildred and Huff executed two documents to effect the assignment. The first document was an amendment to the H V partnership agreement that expressly allowed the method of transferring a partnership interest that was used in the other document. Therefore, it appears that the partnership agreement was not violated by the assignment. The second document set out the terms of the assignment to Huff. Both of those documents clearly state that Mildred was assigning any present and future interest in H V to Huff, thus contradicting the alleged promise made by Huff that Mildred would receive a share of profits upon the sale of the center. Both documents also state that Mildred would no longer be responsible for any losses or liabilities incurred by H V. In addition, Huff offered to enter into an indemnification agreement with Mildred, but that offer was refused. However, notwithstanding that refusal, Mildred testified that she has never been asked to make any payments on the note.
There is no evidence to support the Vances' allegations that Huff promised Mildred a share of the partnership's future profits. However, even if this Court were to accept those allegations as true, we note that Mildred testified that she wanted out of the partnership and voluntarily assigned her interest in H V to Huff. In addition, Mildred testified that Huff did not try to prevent her from reading the documents that she signed, and that she was given ample time to read them but chose not to.
This Court has repeatedly held that the right to rely on the representations of others comes with a concomitant duty on the part of plaintiffs to exercise some measure of precaution to safeguard their interests. See Torres v. State Farm Fire Casualty Co., 438 So.2d 757, 758-59 (Ala. 1983), and cases cited therein. If the circumstances surrounding the alleged misrepresentations are such that a reasonably prudent person exercising ordinary care would have discovered the facts, the plaintiff is not entitled to recover. Bedwell Lumber Co. v. T T Corp., 386 So.2d 413, 415 (Ala. 1980).
In the instant case, the two documents signed by Mildred and Huff appear to be the final expression of their agreement. The evidence shows that Mildred could read and was an experienced businessperson. In addition, no attempt was made to keep Mildred from reading the documents she signed. "In civil contractual matters, the law has always been that one is presumed *Page 752 
to know and intend what he places his signature to." Holman v.Joe Steele Realty, Inc., 485 So.2d 1142, 1144 (Ala. 1986), quoting Broadway v. Household Finance Corp. of Huntsville,351 So.2d 1373, 1376 (Ala.Civ.App. 1977), cert. denied,351 So.2d 1378 (Ala. 1977). Because Mildred could not justifiably rely on the representations that she alleged were made by Huff, summary judgment on counts six and seven of the Vances' complaint was proper.
 Issue VI
Vance also asserted a claim for $500,000 as compensation for work and labor done on behalf of the partnership.
Both Vance and Huff testified during deposition that all of the partners initially agreed to forgo compensation until the outlet center was completed. However, in late 1986 Vance demanded payment of some sort on a weekly basis. He characterizes those payments as draws against future profits, while Huff contends that they were ordinary salary payments to an employee. Regardless of the nature of those payments, it is clear that Vance began receiving $500 a week from Huff in November 1986 and that those payments continued until he withdrew from the partnership. Therefore, his contention that he worked without pay is baseless. In addition, Vance has consistently argued that he was a partner in the outlet center project. Under Ala. Code 1975, § 10-8-43(6), "no partner is entitled to remuneration for acting in the partnership business." Therefore, the entry of summary judgment was proper as to this claim.
For the reasons set out above, this Court concludes that the summary judgments were proper as to each claim in the Vances' complaint, and those judgments are affirmed.
89-744 — AFFIRMED.
89-745 — AFFIRMED.
MADDOX, ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.
[1] The first was a partial summary judgment made final pursuant to Rule 54(b), Ala.R.Civ.P., and the second was entered as to the remaining counts after the plaintiffs had filed their first notice of appeal.
[2] The notice of appeal simply named "John T. Huff, Jr., et al.," as appellees.