Sealing Equipment Products Company, Inc., d/b/a SEPCO, Inc. ("SEPCO"), appeals from a judgment awarding Al Velarde $191,552.25 in compensatory and punitive damages. We affirm.
SEPCO manufactures and distributes fluid sealing products. Al Velarde was SEPCO's international sales representative for Latin America and South America. Velarde began work for SEPCO on May 1, 1989, after receiving a letter dated April 20, 1989, from Jim Falls, SEPCO's sales and marketing manager. The letter offered Velarde employment as SEPCO's international sales representative for Argentina, Brazil, Chile, Columbia, Ecuador, Mexico, Peru, Venezuela, and South Florida, and informed Velarde that "[c]ommissions would be paid on all sales shipped to these markets" and that "[m]onthly sales reports will be forwarded for your review." Velarde met with Geoff Wilder, president of SEPCO, on July 7, 1989, and reached an oral agreement whereby Velarde would be the exclusive agent for SEPCO within his established sales territory. Wilder summed up this oral agreement in a July 21, 1989, letter to Velarde, which stated in part that SEPCO "will pay the sales commission on shipments (less credits and freight) two weeks after month end on all sales" and that Velarde's "commission rate will be seven (7) percent of all sales in your territory exceeding a thirty (30) percent gross profit."
Velarde did not receive sales reports for May, June, or July 1989, although he repeatedly requested copies of monthly sales reports from SEPCO. After Velarde wrote Wilder, on April 16, 1990, requesting copies of monthly sales orders, and after Velarde met with Wilder in May 1990, he received monthly sales reports for the period between August 1989 and June 1990.
In 1990, Velarde discovered that SEPCO products had been shipped by CVG Packing and Forwarding Company ("CVG") in New Jersey to Venalum, a company in Venezuela.[1] SEPCO sold these products to Crown Industrial Supply Company ("Crown") in New Jersey, but shipped them to CVG at Crown's *Page 906 
request.[2] Velarde requested a commission on SEPCO's sales to Crown that were shipped to CVG and that CVG had shipped to Venezuela. Wilder and other SEPCO employees told Velarde that these sales to Crown were on a domestic account and were not sales to an area within Velarde's territory as an international representative of SEPCO. Wilder refused to pay Velarde a commission on these sales. Velarde and Wilder met in June 1990, at which time, according to Velarde, Wilder unilaterally changed the terms of Velarde's employment with SEPCO. Velarde resigned from SEPCO on July 5, 1990.
Velarde sued SEPCO on October 4, 1990, seeking an accounting. SEPCO filed a counterclaim against Velarde, claiming that he owed SEPCO for overpayment of draws (advances in pay taken by Velarde against his anticipated future sales commissions), which SEPCO alleged were in excess of commissions earned by Velarde, and for the cost of a fax machine that SEPCO had purchased for Velarde's use. Velarde amended his complaint to seek damages for breach of contract and for fraud, and he demanded a jury trial. The case was tried to a jury, which returned a verdict in favor of Velarde and awarded him $191,552.25. The trial court denied SEPCO's motions for a judgment notwithstanding the verdict and for a new trial. SEPCO appeals.
SEPCO raises five issues. First, it argues that the trial court erred in dismissing for cause a potential juror who expressed a dislike for punitive damages. Second, it argues that the language of the employment contract between SEPCO and Velarde was unambiguous, that Velarde had no right to commissions on SEPCO's sales to Crown, and that the trial court erred by submitting to the jury the breach of contract claim and the issue of whether the contract was ambiguous. Third, it argues that Velarde did not submit substantial evidence to support his fraud claim and that the trial court erred in submitting the promissory fraud claim to the jury. Fourth, it argues that Velarde did not submit clear and convincing evidence to support his claim for punitive damages and that the trial court erred in submitting the punitive damages claim to the jury.
Finally, SEPCO argues that the trial court erred in denying its motions for a new trial and for a judgment notwithstanding the verdict. SEPCO alleged in support of those motions that the verdict was a result of passion, prejudice, or partiality. SEPCO further alleged that the trial court failed to indicate what the clear and convincing evidence was that it found in support of the award of punitive damages.[3] SEPCO also alleged that the amount of compensatory and punitive damages was excessive and that the trial court failed to enter findings, as required by Hammond v. City of Gadsden,493 So.2d 1374 (Ala. 1986), setting forth the reasons why it did not consider the damages to be excessive.
 I.
SEPCO contends that the trial court erred in striking for cause Margaret Culp, a potential juror who, during voir dire examination of the venire panel, expressed her opinion against punitive damages. SEPCO argues that the trial court erred because it failed to question Ms. Culp, after she initially expressed her dislike for punitive damages, in order to ascertain whether she could have been fair and impartial as a juror.
Velarde's counsel asked the venire panel whether, if the evidence justified an award of punitive damages under Alabama law, any of them "just wouldn't feel comfortable" awarding punitive damages to Velarde "regardless of what the facts were." Ms. Culp responded "I'm against punitive damages." R.T. 70-71. After another potential juror was questioned about his dislike for punitive damages, and had indicated that he could apply the law if *Page 907 
there was evidence of fraud, the following exchange took place:
 "MR. McKIBBEN [Velarde's counsel]: Okay. Anybody else have strong feelings that you feel would have a bearing on that? "MS. CULP: You know there is compensatory damages.
"MR. McKIBBEN: Yes, ma'am.
 "MS. CULP: You need to let them know that. I'm not against that.
"MR. McKIBBEN: Thank you.
 "MS. CULP: But just getting a big number out of the sky —
"MR. McKIBBEN: Yes, ma'am."
R.T. 72-73.
Whether a juror should be excused for cause is a matter within the sound discretion of the trial judge, and this determination is based on the juror's demeanor and on his or her answers to questioning during voir dire of the venire panel.
This Court has written:
"Answers given by prospective jurors on voir dire
 " 'fall into two categories: 1) those affecting the defendant's choice of peremptory challenges (those light impressions which may fairly yield to the testimony); and 2) those affecting the juror's qualifications (those strong and deep impressions which will close the mind against the testimony).' "
Knop v. McCain, 561 So.2d 229, 233 (Ala. 1989),quoting Ex parte Beam, 512 So.2d 723, 724 (Ala. 1987).
 "In challenging a juror for cause, the test to be applied is that of probable prejudice. While probable prejudice for any reason will serve to disqualify a prospective juror, qualification of a juror is a matter within the discretion of the trial court. This Court must look to the questions propounded to, and the answers given by, the prospective juror to see if this discretion was properly exercised. A reversal is not appropriate absent abuse of this discretion.
 "Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. This determination, again, is to be based on the juror's answers and demeanor and is within the sound discretion of the trial judge."
Knop, at 232.
 "This Court cannot and does not seek to supplant the functions of the trial court in evaluating the personal demeanor of the jurors. Once a juror makes an initial statement that is vague, ambiguous, equivocal, uncertain, or unclear or that shows confusion, it is the trial judge's function to question the juror further, so as to ascertain whether the juror can be impartial. However, once a juror indicates initially that he or she is biased or prejudiced or has deep-seated impressions, so as to show that he or she cannot be neutral, objective, or impartial, the challenge for cause must be granted. This is particularly true when a juror, such as Ms. [Culp], volunteers her doubts."
Id. at 234; Wright v. Holy Name of Jesus Med.Center, 628 So.2d 510, 513 (Ala. 1993). The trial judge was able to observe Culp's demeanor, and, reviewing her testimony as a whole, we cannot conclude that her initial statement was vague, ambiguous, equivocal, uncertain, unclear, or confused. We hold that the trial court did not err in striking her for cause.
 II.
SEPCO contends that whether a contract is ambiguous is a question of law for the trial court to determine, citingHaddox v. First Alabama Bank of Montgomery,449 So.2d 1226 (Ala. 1984), that the trial court failed to determine that the contract was ambiguous, and that, therefore, the court erred when it submitted the breach of contract claim to the jury. SEPCO argues that the trial judge could not have determined that the contract was ambiguous, because the trial judge refused to give the following charge to the jury:
 "I charge you, members of the jury, that I have determined as a preliminary matter that this agreement between the parties is ambiguous due to the uncertainty of its language. By ambiguous, I mean that, as *Page 908 
written, the defendant's contract with Mr. Velarde can be read to have more than one interpretation; you, then, must determine the interpretation of the contract and whether Mr. Velarde is entitled to commissions on the sales to Crown."
C.R. 548. The judge stated in chambers, "I'm going to deny that [jury instruction] because I'm not determining the contract is ambiguous." R.T. 820.
 "Whether a contract is ambiguous is a question of law for the trial court to determine. It is the duty of the court to analyze and determine the meaning of a contract when its terms are clear and certain, but when terms of the contract are doubtful of meaning or the language is ambiguous, precontract negotiations and the conduct of the parties may be looked to by the jury as an aid in interpreting the contract."
Underwood v. South Central Bell Telephone Co.,590 So.2d 170, 175 (Ala. 1991). An "instrument is unambiguous if only one reasonable meaning clearly emerges." ReevesCedarhurst Dev. Corp. v. First Amfed Corp., 607 So.2d 184,186 (Ala. 1992), quoting Vainrib v. Downey,565 So.2d 647, 648 (Ala.Civ.App. 1990). " '[I]f the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury.' " Id., quoting McDonald v. U.S. DieCasting Dev. Co., 585 So.2d 853, 855 (Ala. 1991).
The trial court did instruct the jury on determining the intent of the parties to a contract, as expressed in instruction 10.07, Alabama Pattern Jury Instructions:Civil:
 "The intent of the parties to a contract is determined by considering the relationship of the parties, what they said and what they did and all the surrounding circumstances. You will consider the nature of the contract, facts and circumstances leading up to and attending its execution, relation and condition of the parties, nature and condition of the subject matter and apparent purpose of making the contract. From a careful consideration of all of these matters you will determine from the evidence the intention of the parties at the time of the execution of the contract and render a verdict based upon the intention of the parties. You will not attempt to alter the expressed intention of the parties if they are clear and unambiguous. A person's secret intent has no bearing; only the intent indicated by his words and acts may be considered."
C.R. 537.
By instructing the jurors to determine the intent of the parties, based in part on the facts and circumstances surrounding the making of the contract, the trial judge determined that the terms of the contract were ambiguous, "[b]ecause the circumstances surrounding the contract are considered only where the terms [of the contract] are ambiguous." Reeves Cedarhurst, supra, at 187 (emphasis added). Thus, the court did not err in submitting the breach of contract claim to the jury.
 III.
SEPCO contends that Velarde did not submit substantial evidence to support his fraud claim, and that the trial court erred in submitting the promissory fraud claim to the jury. Velarde's fraud claim alleged, in essence, that SEPCO promised to pay him commissions on all SEPCO products shipped to Venezuela (and that no conditions were agreed upon or discussed whereby Velarde's commission was dependent upon SEPCO's shipping or selling its products directly to businesses or agencies within his sales territories), but that, at the time it made this promise, SEPCO had no intention of honoring it.
 "The elements of promissory fraud are: (1) a misrepresentation; (2) of a material existing fact; (3) upon which the plaintiff justifiably relied; (4) which proximately caused injury or damage to the plaintiff. In addition to those elements, the plaintiff must also present evidence showing that at the time the defendant made the alleged misrepresentations, the defendant intended not to do the acts promised and intended to deceive the plaintiff. The defendant's intent to deceive can be established through circumstantial evidence that relates to events that occurred after the alleged misrepresentations were made." *Page 909 
Vance v. Huff, 568 So.2d 745, 750 (Ala. 1990) (citations omitted).
The mere failure to perform, alone, is not sufficient evidence of promissory fraud. Cabnetware, Inc. v.Birmingham Saw Works, Inc., 614 So.2d 1034, 1037
(Ala. 1993). To submit his promissory fraud claim to the jury, Velarde presented sufficient credible evidence from which the jury could determine that, at the time SEPCO entered the employment contract with Velarde, SEPCO did not intend to honor that contract and intended to deceive Velarde.
Venalum could purchase goods from United States suppliers only through CVG Packing and Forwarding in New Jersey. SEPCO sold its products to Crown, and Crown sold them in turn to CVG for shipment to Venezuela. Sherrell Mooney, SEPCO's salesperson for the northeastern United States, was paid commissions for SEPCO's sales to Crown. According to Mooney, SEPCO shipped the orders at issue in this case to CVG, at Crown's request, and labelled the pallets containing the shipments with tags that read "Venalum" and "Venezuela." R.T. 795-97. CVG was a purchasing/freight forwarding agency for certain Venezuelan national companies, such as Venalum. SEPCO paid Velarde a commission on goods it shipped to other purchasing/freight forwarding agencies that consolidated and forwarded goods to Mexico and Chile, even though the forwarding agencies were not in Velarde's sales territory.[4] R.T. 662-68. Wilder, SEPCO's president, testified that he did not know that SEPCO's shipments to Crown were being shipped to CVG or that their final destination was Venezuela, but he did testify that he knew the shipments were going to South America. The deposition testimony of Gary Dobson, SEPCO's general manager, was read into evidence; it indicated that Dobson knew that the shipments at issue to Crown were tagged for shipment to Venezuela.
Because there was substantial evidence in the record to support Velarde's claim that, at the time it made the representations SEPCO intended to dishonor them or intended to deceive Velarde, the trial court did not err in submitting the promissory fraud claim to the jury.
 IV.
SEPCO contends that Velarde failed to submit clear and convincing evidence to support his claim of promissory fraud and that the trial court, therefore, erred when it submitted Velarde's claim for punitive damages to the jury.[5] However, the record reveals credible evidence from which the jury could have drawn inferences to support the verdict.
SEPCO's intent to deceive Velarde can be shown by circumstantial evidence relating to events that occurred after the alleged misrepresentations were made. Vance v.Huff, supra, at 750. As we have shown, the jury correctly determined that SEPCO was to pay Velarde a commission on "all sales" of its products that were "shipped to" his territory.
Jim Falls, SEPCO's sales and marketing manager, testified that, although his letter of April 20, 1989, offering Velarde employment as an international sales representative, stated that Velarde would be paid a commission "on all sales shipped to" Velarde's sales territories, what he had intended was for Velarde to receive commissions on sales that SEPCO "billed to an international customer," whether or not that customer "was physically located geographically in a territory." R.T. 66869. Falls also testified that, at the time he made the agreement with Velarde on behalf of SEPCO, he intended to pay Velarde a commission on sales shipped to Velarde's markets. R.T. 701. He later qualified this statement by testifying that he had intended to pay Velarde commissions only on those sales shipped to his markets "[b]y SEPCO or by someone in [Velarde's] south Florida" territory. R.T. 713. Wilder, SEPCO's president, also testified that Velarde was entitled to commissions only on goods "shipped internationally by SEPCO." R.T. 380 (emphasis *Page 910 
added). However, Velarde was paid commissions for sales shipped domestically to the freight forwarding agencies Marco Seattle in Seattle, Washington, and RPM in Laredo, Texas (see n. 4), although there was no evidence that SEPCO shipped these sales internationally or that SEPCO billed these sales to an international customer. The jury could have inferred from this evidence that Velarde was to be paid a commission on sales "shipped to" businesses or agencies within his territories.
There was also evidence that SEPCO sold products to Crown in 1985, but shipped them to "C.V.G. Packing and Forwarding Co." in New Jersey, and that the purchase order indicated that the order was "issued on behalf of and consigned to: CVG Industria Venezolana De Alumino, C.A." Again, in 1986, SEPCO sold products to Crown but shipped them to "Venalum c/o CVG Packing and Forwarding" in New Jersey. From this evidence, the jury could have drawn inferences supporting Velarde's contention that SEPCO knew, before it hired Velarde, that orders billed to Crown and shipped to CVG would be shipped to Venezuela. Wilder testified that he "never intended to pay Mr. Velarde from day one a commission on any sale that was billed to Crown, shipped to CVG and tagged for shipment to Venezuela." R.T. 407-08.
These and other facts and circumstances indicated by the record provide clear and convincing evidence from which the jury could have drawn inferences to support its verdict and its award of punitive damages. Therefore, the trial court did not err when it submitted Velarde's claim for punitive damages to the jury.
 V.
SEPCO argues that the trial court erred in denying its motions for a new trial and for a judgment notwithstanding the verdict. SEPCO alleged in support of those motions that the verdict was a result of passion, prejudice, or partiality. SEPCO further alleged that there was insufficient evidence to support an award of punitive damages, and that the trial court failed to indicate what the clear and convincing evidence was that it found in support of the award of punitive damages. Finally, SEPCO alleged that the trial court failed to enter findings, as required by Hammond v. City of Gadsden,493 So.2d 1374, setting forth the reasons why it did not consider the compensatory and punitive damages to be excessive.
A jury verdict carries with it a presumption of correctness, and when the trial court denies a motion for a new trial, that presumption is strengthened. Stokes v. Long-Lewis Ford,Inc., 549 So.2d 51, 52 (Ala. 1989). SEPCO's motion for a judgment notwithstanding the verdict required the trial court to test the jury's verdict against the evidence, as viewed in a light most favorable to Velarde, and to determine whether there was any credible evidence from which the jury could have drawn inferences to support the verdict. Resolution TrustCorp. v. Mooney, 592 So.2d 186, 188 (Ala. 1991). Because we find clear and convincing evidence to support the jury's verdict, we hold that the trial court did not err when it denied SEPCO's motions for a judgment notwithstanding the verdict and for a new trial.
SEPCO moved for a new trial partly because, it argued, the jury's verdict was excessive. Because "[t]he trial court summarily denied that motion, without entering the findings required by Hammond v. City of Gadsden," SEPCO argues that "the cause is due to be remanded for the trial court to enter those findings." Seaboard System R.R. v.Russell, 582 So.2d 1092, 1092-93 (Ala. 1991).
However, "[w]here the record on appeal is sufficiently clear for us to review the excessiveness issue, a Hammond
remand is not necessary." Valley Bldg. Supply Inc. v.Lombus, 590 So.2d 142, 146 (Ala. 1991); Lowder RealtyCo. v. Sabry, 542 So.2d 1240, 1242 (Ala. 1989); Statev. McCurdy Concrete, Inc., 507 So.2d 403, 404 (Ala. 1986). Viewing the evidence most favorably to Velarde, as our standard of review requires, we find ample evidence in the record to support the imposition of punitive damages. Moreover, our review of the evidence provides no indication that the jury's verdict was "the result of bias, passion, corruption, or any other improper motive." General Finance Corp. v.Smith, 505 So.2d 1045, 1049 (Ala. 1987).
The jury returned a general verdict for $191,552.25. Velarde requested compensatory *Page 911 
damages of $31,552.25, and the trial judge indicated that he would not submit separate verdict forms to the jury for compensatory and punitive damages because any amount awarded in excess of $31,552.25 would be punitive damages. The parties do not dispute that $160,000 of the verdict represented punitive damages. The evidence indicated that SEPCO made approximately $161,000 in profits from its sales shipped to Venalum that were at issue in this case. Velarde's counsel argued to the jury that SEPCO's profits should be taken away to punish it for defrauding Velarde.
 "In Green Oil Co. v. Hornsby
[539 So.2d 218 (Ala. 1989)] . . . this Court . . . outlined the factors trial courts should consider when reviewing a punitive damages award and should include in the Hammond order. Those factors include . . . the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss. . . ."
Valley Bldg. Supply Inc. at 146. We have carefully reviewed the evidence in this case and find that it supports the jury's imposition of punitive damages. SEPCO's profits were slightly more than $160,000, and it seems apparent that the jury awarded $160,000 in punitive damages to remove that profit as punishment for SEPCO's wrongful conduct.
Because the record contains ample evidence for this Court to review the excessiveness issue, a Hammond remand is not necessary. Nothing in the record indicates that the punitive damages imposed against SEPCO were excessive. A remand is not necessary to ensure that SEPCO's rights were not violated by an excessive verdict; the record on appeal supports the determination that the verdict was not excessive.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, STEAGALL and INGRAM, JJ., concur.
[1] CVG Packing and Forwarding, or Corporacion Venezuana Guiana Packing and Forwarding, is a freight forwarding agency that acts as the main purchasing office for the Venezuelan government. Venalum, which is an acronym for CVG Industria Venezolana De Aluminio, C.A., is Venezuela's nationalized company for aluminum production. Venalum and other Venezuelan national companies must purchase all goods from United States suppliers through CVG Packing and Forwarding, which consolidates the purchases and ships them to Venezuela. R.T. 216-17.
[2] CVG would place an order with Crown for sealing products. Crown would then place an order with SEPCO, and arrange for SEPCO to ship the order to CVG in New Jersey. All products purchased by CVG were shipped to Venezuela.
[3] SEPCO contends there was not the clear and convincing evidence required by § 6-11-20, Ala. Code 1975, to support an award of punitive damages.
[4] SEPCO shipped goods to Marco Seattle, in Seattle, Washington, which forwarded those goods to Marco Chilena in Chile; and to RPM Forwarding Agency in Loredo, Texas, which forwarded those goods to Masel in Mexico City.
[5] Although only substantial evidence is required to prove fraud, punitive damages are awarded only if supported by clear and convincing evidence. § 6-11-20, Ala. Code 1975.