* [Note from the reporter of decisions: As of the date of publication, this case was pending on certiorari petition in the Alabama Supreme Court, docket no. 1961775.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 480 
This is an appeal from a judgment entered on a jury verdict.
This case commenced when Fred Lewter and Linda Lewter sued Chris Myers Pontiac-GMC, Inc. ("Myers Pontiac"), for conversion. Myers Pontiac counterclaimed, alleging fraud and requesting compensation under the theories of open account, quantum meruit, and unjust enrichment. The Lewters filed a motion for a summary judgment on Myers Pontiac's counterclaims and sought attorney fees under the Alabama Litigation Accountability Act (ALAA), §§ 12-19-270 to -276, Ala. Code 1975. The trial court entered a summary judgment for the Lewters on Myers Pontiac's counts of fraud and quantum meruit and granted the Lewters' request for attorney fees pursuant to the ALAA. Myers Pontiac appealed the summary judgment and award of attorney fees, but this court dismissed the appeal because a final judgment had not been entered. Thereafter, a jury trial was held on the remaining claims and counterclaims, and the jury awarded one verdict in favor of the Lewters and one verdict in favor of Myers Pontiac. The trial court entered a judgment on the jury verdicts, and Myers Pontiac appealed this judgment and the summary judgment to this court. In addition, Myers Pontiac and its trial attorney, David P. Shepherd, appeal from the trial court's award of attorney fees pursuant to the ALAA.
Before addressing the multiple arguments Myers Pontiac raises on appeal, we will briefly summarize the relevant facts. On December 2, 1994, the Lewters' 1990 GMC van stopped running and was towed to Myers Pontiac's service department. Scott Jeffers, a Myers Pontiac service representative, telephoned Mr. Lewter and informed him that the van's engine had "frozen up" because of a lack of oil. Jeffers provided an estimate for the cost of replacing the engine. Jeffers testified that when he gave Mr. Lewter the estimate, Mr. Lewter originally indicated that he might have difficulty paying it, but that he subsequently authorized Jeffers to install the new engine. Mr. Lewter testified at trial that he did not authorize Myers Pontiac to replace the engine, but, he testified, he had instructed Myers Pontiac's service department to dismantle his engine to determine which of its components had failed. Myers Pontiac installed the new engine, and, because Mr. Lewter did not pay for the repairs, Myers Pontiac maintained possession of the van until this lawsuit was filed, at which time the trial court issued a writ of seizure returning the van to the Lewters.
Myers Pontiac argues that the trial court erred in entering a summary judgment on two of its counterclaims and also argues that the trial court's award of attorney fees under the ALAA was improper. To enter a summary judgment, the trial court must determine that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Bussey v. John Deere Co.,531 So.2d 860 (Ala. 1988). Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bankof Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). To defeat a properly supported motion for a summary judgment, the nonmovant must present substantial evidence creating a genuine issue of material fact. Substantial evidence has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989).
First, Myers Pontiac argues that it presented substantial evidence to defeat the Lewters' motion for a summary judgment on its claim of promissory fraud. The elements of promissory fraud are: (1) a misrepresentation; (2) of a material existing fact; (3) *Page 481 
upon which the plaintiff justifiably relied;[1] (4) which proximately caused injury or damage to the plaintiff. Vance v.Huff, 568 So.2d 745, 750 (Ala. 1990). In addition, the plaintiff must present evidence indicating that at the time the misrepresentation was made the defendant intended not to perform and intended to deceive the plaintiff. Id. Intent to deceive can be established through events occurring after the alleged misrepresentations were made. Id.; Rasp v. Ballard,651 So.2d 39, 41 (Ala.Civ.App. 1994).
In reviewing the evidence in a light most favorable to Myers Pontiac, we will assume to be true the testimony offered by its employees. Scott Jeffers testified by deposition that Mr. Lewter had instructed them to install the engine and that he represented that he would pay them the estimated cost. Jeffers and other employees testified that after the engine was installed, Mr. Lewter refused to pay the charges and had a writ of seizure issued so that he could recover his van without paying. They testified that his actions led them to believe that he had never intended to pay them, and that he had planned to "rip somebody off" from the beginning. After reviewing all the evidence in a light most favorable to Myers Pontiac, we conclude that Myers Pontiac failed to present substantial evidence that at the time the alleged promise to pay was made Mr. Lewter intended not to pay Myers Pontiac for the new engine. Indeed, the failure to perform, alone, does not constitute substantial evidence that at the time the alleged promise was made the promisor intended not to perform.Watters v. Lawrence County, 551 So.2d 1011 (Ala. 1989). Therefore, the trial court properly entered the summary judgment on the promissory fraud claim.
Myers Pontiac and its trial attorney, David P. Shepherd, also argue that the trial court improperly awarded attorney fees to the Lewters pursuant to the ALAA. The ALAA provides that attorney fees shall be assessed against any party if the trial court finds that it brought any action, or asserted any claim or defense, "without substantial justification." §12-19-272(c), Ala. Code 1975. "Without substantial justification" is defined as meaning "such action, claim, defense or appeal (including any motion) is frivolous, groundless in fact or in law, or vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of litigation, as determined by the court." § 12-19-271(1), Ala. Code 1975.
A trial court's findings that a claim is "frivolous," "groundless in fact," "vexatious," or "interposed for any improper purpose," are factual determinations, and they will not be disturbed on appeal unless "clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." Pacific Enterprises Oil Co. (USA) v.Howell Petroleum Corp., 614 So.2d 409, 418 (Ala. 1993). However, a trial court's finding that a claim is "groundless in law" is not entitled to a presumption of correctness. Id.
The trial court entered the following order on the case action summary:
 "It is the finding of this court that the fraud count set forth in the defendant's counterclaim was without substantial justification in that it was groundless in fact and law and was vexatious. Factors persuasive to the court include the several efforts made by Mr. Beckish [the Lewters' attorney] to allow Mr. Shepherd to voluntarily dismiss the frivolous counterclaim, the lack of any evidence of fraud at the deposition, Mr. Shepherd's continued assertion of the fraud count, the poor financial status position of the [Lewters] vis-à-vis [Myers Pontiac], and the extensive period of time Mr. Shepherd had to consider the matter before filing the counterclaim. A reasonable attorney fee in the amount of $2,767.50 is awarded in favor of [the Lewters] and against Mr. Shepherd and Chris Myers Pontiac jointly and severally." *Page 482 
First, we note that promissory fraud is a cognizable claim in this state, see e.g., Vance, 568 So.2d at 750, and that, therefore, this claim is not groundless in law. Regarding evidence in support of this claim, Myers Pontiac's employee, Scott Jeffers, testified that he had called Mr. Lewter with the estimate for installing a new engine. He also testified that, after first indicating that he was in poor financial condition, Mr. Lewter then called Jeffers back and had instructed him to install the new engine, representing that he could pay for the new engine after all. Jeffers testified that, upon arriving to pick up his van, Mr. Lewter did not appear surprised or angry that a new engine had been installed. Evidence was also presented showing that Mr. Lewter did not pay for the repairs and that he had a writ of seizure issued, which allowed him to retrieve his van without paying for the repairs. As noted previously, this evidence does not rise to the level of substantial evidence, which is needed to defeat the motion for a summary judgment. However, considering this evidence, which was known to Myers Pontiac, we cannot say that the fraud claim was "groundless in fact," especially considering that circumstantial evidence is permitted in proving intent to deceive in a promissory fraud case, see Rasp, 651 So.2d at 41. Therefore, we conclude that the trial court's award of attorney fees to the Lewters pursuant to the ALAA was against the great weight of the evidence and must be reversed.
Myers Pontiac also argues that the trial court erred in entering a summary judgment on its claim of unjust enrichment. It contends that having a new engine in the van increased its value by approximately $10,000 and that the Lewters had therefore been unjustly enriched by regaining possession of it without paying for the new engine. Although Myers Pontiac argues that it had evidence of the van's increased value, it failed to present this evidence to the trial court in response to the Lewters' motion for a summary judgment. Indeed, the deposition excerpts cited by Myers Pontiac in its brief in support of this argument are not contained in the record, and were not before the trial court when it ruled on the motion for a summary judgment. In reviewing a summary judgment, we are limited to the record alone, and it cannot be modified by statements or facts contained in the brief. Kemp Motor Sales,Inc. v. Lawrenz, 505 So.2d 377 (Ala. 1987). Therefore, the trial court properly entered the summary judgment on the unjust enrichment claim.
In addition, Myers Pontiac argues that the trial court abused its discretion by entering an order that refused to compel the Lewters to produce the notes of their expert and that allowed the Lewters' expert to testify at trial. This order was entered some 10 months before the trial of the case. A petition for a writ of mandamus is the proper means for achieving appellate review of a trial court's ruling on discovery matters. Ex parteMobile Fixture Equipment Co., 630 So.2d 358 (Ala. 1993);Fomby v. Popwell, 695 So.2d 628 (Ala.Civ.App. 1996). Because Myers Pontiac did not petition for a writ of mandamus, this case went to trial without a test of the correctness of the trial court's ruling on discovery. Therefore, we will not address Myers Pontiac's arguments on this issue.
Finally, Myers Pontiac argues that the trial court should have granted its motion to alter, amend, or vacate the judgment that was entered on the jury verdict, which purported to award the Lewters punitive damages in the form of attorney fees in the amount of $38,000. The jury verdicts were as follows:
 "FOREPERSON: We — the counterclaim verdict. We, the Jury, find for the Defendant, Chris Myers in the amount of fifteen hundred forty-seven dollars and eighty-five cents, which is engine costs.
"THE COURT: Okay.
 "FOREPERSON: We, the Jury — the original verdict. We, the Jury, find in favor of the Plaintiffs, Fred and Linda Lewter, and award damages as follows: Possession of the 1990 GMC van, no compensatory damages, punitive damages are legal fees."
The jury was then returned to the jury room, and the following discussion occurred: *Page 483 
 "THE COURT: Okay. I don't have any problem with the counterclaim verdict. I don't understand the original verdict on the original claim, the punitive damages and legal fees, I'm not sure that that is going to be something that I will be able to determine an amount on and I think that I might need to have the Jury clarify an amount or something of that nature.
"MR. BECKISH: I would think so.
 "THE COURT: Are there any problems or comments that either of you have on the original verdict form?
"MR. BECKISH: No, Your Honor.
 "THE COURT: It was possession of the van, no compensatory damages but legal fees for the punitive damages. I don't know if that is a consistent verdict.
 "MR. SHEPHERD: Your Honor, I do not feel that punitive damages could be awarded if there are no compensatory damages from a legal point of view.
 "MR. BECKISH: Actually, Judge, I think they can because they did get a compensatory in terms of the van.
"THE COURT: All right.
". . . .
 "THE COURT: I'm going to take the van as compensation to it, sufficient compensatory damages, at this time without even reaching a conclusion that it is absolutely essential that compensatory damages be awarded before punitive damages may be awarded.
 "But I feel that I am going to have to bring them back in and instruct them again.
 (Whereupon, the Jury was brought into the Courtroom.)
 "THE COURT: Okay. You have returned a verdict in the original claim that I would not be able to translate into dollars and cents. You have awarded punitive damages consisting of the amount of legal fees and that is not an acceptable verdict. We are going to have to send you back and ask you to reduce that to a dollar figure amount so that we can know what it is that you are talking about. That is not a verdict that I am going to be able to accept.
 "So, I am going to ask Mr. Cox to return you to the Jury Room and ask you to take the verdict form and translate for us what that amount is that you are indicating on legal fees.
 "(Whereupon, the Jury was taken back to the Jury Room.)
 "(Whereupon, the Jury was brought into the Courtroom.)
 "THE COURT: Okay. Have you all reached a final verdict?
"FOREPERSON: Yes.
 "THE COURT: Would you please stand and read the verdict to the Court.
 "FOREPERSON: We, the Jury, find in favor of the Plaintiffs, Fred and Linda Lewter, and award damages as follows: The punitive damages are thirty-eight thousand dollars."
Myers Pontiac argues that the verdict was inconsistent because the jury awarded punitive damages without awarding compensatory damages. Although the jury did not award money to the Lewters as compensatory damages, it did award them possession of the van, which included the value of Myers Pontiac's labor in installing the new engine. The record reflects that the jury was presented with evidence that Myers Pontiac charged the Lewters $3,882.20 for the installation of the new engine. An invoice from Myers Pontiac's parts supplier showed that the cost for the new engine itself was $1,547.85. The jury awarded Myers Pontiac $1,547.85 on its claim brought under open account and specifically stated that this amount was for the cost of the engine. In addition, the transcript shows that the jury was instructed to decide which party should be awarded possession of the van. Therefore, by awarding the van to the Lewters, and by only compensating Myers Pontiac for the base cost of the new engine, the jury effectively awarded the Lewters the labor costs incurred in installing the engine and the other miscellaneous charges for additional parts. Therefore, we agree with the trial court that the award of the van constituted compensatory damages, and that the verdict was not inconsistent. Thus, we need not address the parties' arguments regarding whether a jury can award punitive damages *Page 484 
without an accompanying award of compensatory damages.
Finally, Myers Pontiac argues that the trial court should have granted its post-trial motion to alter, amend, or vacate the judgment because, it argues, the jury improperly awarded attorney fees as punitive damages. The transcript clearly shows that the jury did in fact award attorney fees as punitive damages. In its first award, the foreperson stated that "punitive damages are legal fees." In reinstructing the jury, the trial judge told the jurors to "translate for us what that amount is that you are indicating on legal fees." Thus, there is no question that the jury's final verdict in the amount of $38,000 was an award of attorney fees. Myers Pontiac argues that such an award of attorney fees was improper. We agree.
In reviewing the record, we find the following facts pertinent to this issue. The Lewters did not request attorney fees in their complaint. In addition, it appears that no evidence regarding attorney fees was presented to the jury. Thus, the jury had no evidence from which it could determine an amount to award as attorney fees. Furthermore, the trial court did not charge the jury that it could consider awarding attorney fees.
The Lewters argue that Myers Pontiac failed to preserve this issue for review, because its attorney did not object, as is required by Rule 51, Ala.R.Civ.P. The transcript reveals that Myers Pontiac's attorney objected to the jury verdicts based solely on the argument that the verdicts were inconsistent. The argument that the award of punitive damages was improper because it was an award of attorney fees was not raised until Myers Pontiac filed its post-trial motion. Under Rule 51, a party must object to an improper oral charge before the jury begins deliberations or, in the case of additional instructions, the party must at least object outside the presence of the jury. If a party fails to so object, then any alleged error in the instruction is not preserved for appeal. Rule 51, Ala.R.Civ.P. See also BIC Corp. v. Bean, 669 So.2d 840
(Ala. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1045,134 L.Ed.2d 192 (1996).
However, in this case, it is the jury, and not the trial court, that erred. As the Alabama Supreme Court has held, Rule 51 does not apply to jury errors, but only to alleged errors based on the trial court's giving or failing to give a requested charge, or on the trial court's giving of an improper charge. McCain v. Redman Homes, Inc., 387 So.2d 809 (Ala. 1980). Although Myers Pontiac's attorney could have orally objected to the jury verdict, to do so was not required by Rule 51, because the jury's verdict of attorney fees as punitive damages was not based on any improper instruction by the trial court. The jury was not instructed to consider attorney fees and was not presented evidence as to attorney fees. Nevertheless, the jury returned a verdict awarding attorney fees as punitive damages. The trial court's additional instruction merely directed the jurors to specify an amount for the award of attorney fees, which was an award that had already been established.
The jury verdict awarding attorney fees as punitive damages reflects confusion on the part of the jury. The jury not only made an award that it was not authorized to make, but it made an award that exhibits a misunderstanding of the purpose of punitive damages. In addition, this jury verdict was improper in that this court is unaware of any case or statutory law permitting attorney fees to be awarded as punitive damages in this state. See C. Gamble, Alabama Law of Damages, § 9-6 (3d ed. 1994) (stating that, although some jurisdictions allow attorney fees to be considered in awarding punitive damages, "Alabama has not adopted this 'punitive damages exception' to the general rule that attorney fees are not ordinarily assessable in the absence of contract, statute, or equitable principle.") Because the jury verdict was improper, the trial court erred by not granting Myers Pontiac's post-trial motion.
The trial court's order assessing attorney fees under the ALAA and the trial court's order denying Myers Pontiac's post-trial motion are reversed. The remaining rulings are affirmed. The case is remanded for further proceedings consistent with this opinion. *Page 485 
All the parties' motions that have not been rendered moot by this opinion are hereby denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, J., concurs.
YATES, J., concurs in the result.
ROBERTSON, P.J., and CRAWLEY, J., concur in part and dissent in part.
[1] We note that in Foremost Ins. Co. v. Parham, 693 So.2d 409
(Ala. 1997), our supreme court discussed the "justifiable reliance" standard and replaced it with a "reasonable reliance" standard. However, the new standard applies to all fraud casesfiled after March 14, 1997, and, thus, does not apply to the present case.